## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CITIZENS INSURANCE COMPANY OF AMERICA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-05292-MHC |
| BANYAN TREE MANAGEMENT, LLC; et al., | ) ) ) | |
| Defendants. | ) ) | |
| BANYAN TREE MANAGEMENT, LLC; et al., | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| STARR INDEMNITY & LIABILITY COMPANY, | ) ) ) | |
| Third-Party Defendant. | ) ) | |

### THIRD-PARTY DEFENDANT STARR INDEMNITY & LIABILITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON BANYAN TREE MANAGEMENT, LLC AND ALBANY DOWNTOWN HOTEL PARTNERS, LLC'S THIRD-PARTY COMPLAINT AND ITS THIRD-PARTY COUNTERCLAIM AND CROSSCLAIM AGAINST JANE DOE

Third-Party Defendant Starr Indemnity & Liability Company ("Starr") files

this Memorandum of Law in Support of Its Motion for Summary Judgment on

Banyan Tree Management, LLC ("Banyan") and Albany Downtown Hotel Partners, LLC 's ("Albany") Third-Party Complaint and Its Third-Party Counterclaim and Crossclaim Against Jane Doe, showing the Court as follows:

In its Third-Party Counterclaim and Crossclaim for Declaratory Judgment, Starr seeks a declaration that it has no duty to defend or indemnify Third-Party Plaintiffs Banyan and Albany (collectively, the "Banyan Entities") from the claims asserted in the underlying lawsuit filed by Crossclaim Defendant Jane Doe in state court, as the claims do not fall within the coverages of the policy issued by Starr or are otherwise excluded. The Banyan Entities, in their Third-Party Complaint, seek a declaration that Starr must defend and indemnify them from the claims asserted in the underlying suit.

The Insuring Agreement of Coverage A, which provides coverage for "bodily injury," is not triggered because the claims do not seek damages because of "bodily injury" caused by an "occurrence." To the extent that coverage was potentially triggered under Coverage A, Exclusion o. "Personal and Advertising Injury" precludes coverage because any "bodily injuries" arose out of "personal and advertising injury."

The Insuring Agreement of Coverage B, which provides coverage for "personal and advertising injury," is not triggered because the claims arise out of

offenses which occurred <u>prior</u> to the policy period and any alleged offenses that occurred during the policy period were not offenses arising out of the business of the Banyan Entities.

In addition, two endorsements to the Policy exclude coverage under both Coverage A and Coverage B for the claims, as pled. The "Exclusion-Access Or Disclosure Of Confidential Personal Information And Data-Related Liability-Limited Bodily Injury Exception Not Included" endorsement (the "Access or Disclosure Endorsement") precludes coverage because the claims asserted in the underlying action are fundamentally based on access to and disclosure of Jane Doe's personal naked image, her personal information or "any other type of nonpublic information." The "Violation Of Statutes In Connection With Sending, Transmitting Or Communicating Any Material Or Information Exclusionary Endorsement" (the "Violation of Statutes Endorsement") precludes coverage because the alleged liability of the Banyan Entities is also based on the illegal and criminal acts of John Doe in violation of statutes, ordinances or regulations that apply to the transmitting of material or information.

## I.   **Background Information**

### A. The Underlying Litigation

On July 2, 2019, Jane Doe filed her Complaint against Banyan, Albany and John Doe in the civil action styled *Jane Doe v. Banyan Tree Management, LLC et al.*, Case No. 19-C-04673-S3, State Court Of Gwinnett County State of Georgia (the "Underlying Complaint").[1] In the Underlying Complaint, Jane Doe asserts claims for Negligence and Premises Liability against Banyan and Albany. (*See generally*, Underlying Complaint) Jane Doe's claims arise out of her being allegedly videotaped by a hidden camera while showering in her hotel room at the Hampton Inn and Suites Albany-Downtown Hotel (the "Hotel") during July 2015 and that video of her naked image being subsequently used in extortion attempts by John Doe via his posting of the video on the internet and his related criminal extortion emails to Jane Doe. (Underlying Complaint, ¶¶ 9, 10, 21 and 28)

In the Underlying Complaint, Jane Doe alleges that she did not consent to being recorded while fully nude in the shower and that she did not know that she was recorded until she received a September 30, 2018 email from John Doe. (*Id.* at ¶¶ 10 and 11) Jane Doe alleges that the September 30, 2018 email included a link

---

[1] A true and accurate copy of the Underlying Complaint is attached as Exhibit 1 hereto. (Jane Doe's Objections and Responses to Starr Indemnity's Requests for Admission, No. 2, Ex. B)

to the video of her showering, which was publicly available on the internet. (*Id*. at ¶¶ 11 and 12) She alleges that later that evening she received another email from John Doe which contained specific personal details about her. (*Id*. at ¶ 14)

Jane Doe alleges that she received subsequent emails from John Doe, including emails in which John Doe attempted to blackmail or extort money from her under threat of publishing the video.[2] (*Id*. at ¶¶ 15-19) Jane Doe alleges that as of October 11, 2018, the video was posted on multiple pornographic websites and that each posting included her full name in the video title. (*Id*. at ¶ 21) She alleges that on October 26, 2018 she received an email from John Doe in which he attempted to extort money from her, writing, *inter alia*, the following:

> *A little bit of money and it all goes away.*
>
> *$2,000 USD TODAY. Then $1,000 USD each month for one year. You pay some now, a little later, and some after that. First payment and I stop the videos. Second payment less money, stay quiet. Third payment, stay quiet. You're buying peace. Easy right? Reply and then you get the BITCOIN address. So easy.*

(*Id*. at ¶ 28) (italics in original)

In the Underlying Complaint, Jane Doe alleges that the individual or individuals who recorded her "knew which room she stayed in, knew her full

---

[2] The texts of the emails that Jane Doe asserts she received are set forth in Exhibit 2.

name, and knew her personal email address" and that such information was provided to the staff of the Hotel upon check-in to her room. (*Id*. at ¶ 41) She alleges that in order to have access to such personal information the person who recorded her, John Doe, would have had to have been an employee of the Hotel. (*Id*. at ¶ 43)

Jane Doe alleges that at the time when she was recorded by the hidden camera, Banyan managed and operated the Hotel, Albany owned the Hotel and John Doe was an employee of Banyan and/or Albany. (*Id*. at ¶¶ 33, 34 and 45) She alleges that the Banyan Entities breached the duty of care owed to ensure that she was safe and that her privacy was maintained while she stayed at the Hotel and that they are vicariously liable for the acts of their employees. (*Id*. at ¶¶ 52, 54, 58 and 59)

Jane Doe alleges that after she received the emails from John Doe, she suffered severe emotional distress which resulted in health issues: "Since the incident she has sustained significant gastrointestinal issues and has lost over 30 pounds to date. Plaintiff did not have these problems prior to the incident." (*Id*. at ¶ 46) She does not allege that her injuries were ever the result of any unwanted touching or physical contact by any person or thing.

**B. The Starr Policy.**

Starr issued Policy No. 1000305221181 with a policy period of July 31, 2018 through July 31, 2019 to the Named Insured "Banyan Tree Management, LLC" (the "Starr Policy").[3] Albany qualifies as an additional insured under the terms and conditions of the Starr Policy "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule[.]" (Starr Policy, Additional Insured – Managers or Lessors of Premises endorsement)

The Starr Policy contains, *inter alia*, the following terms and conditions:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

_____

[3] A true and accurate copy of the Starr Policy is attached as Exhibit 3.

…

**b.** This insurance applies to "bodily injury" and "property damage" only if:

  **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

…

**2. Exclusions**

This insurance does not apply to:

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

…

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

…

8

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

…

## 2. Exclusions

This insurance does not apply to:

### a. Knowing Violation Of Rights Of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

### d. Criminal Acts

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

## SECTION V – DEFINITIONS

…

**3.** "Bodily injury"[4] means physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress.

…

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

---

[4] As amended by the Bodily Injury Definition Endorsement.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

…

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

…

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

…

The Access Or Disclosure Endorsement adds the following exclusion to Coverage A:

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

…

The Access Or Disclosure Endorsement adds the following exclusion to Coverage B:

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

The Violation of Statutes Endorsement" adds the following exclusions to Coverage A and Coverage B:

[This insurance does not apply to] "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate any statute, ordinance, or regulation of any federal, state or local government, including any amendment of or addition to such laws, that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.
…

[This insurance does not apply to] "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate any statute, ordinance, or regulation of any federal, state or local government, including any amendment of or addition to such laws, that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

## II.    <u>Argument and Citations to Authority</u>

Starr has no duty to defend or indemnify the Banyan Entities from the claims asserted in the Underlying Complaint because, as pled, they do not fall within the

11

coverages of the Starr Policy and, even if they do potentially trigger coverage, they are explicitly excluded under both Coverage A and Coverage B.

Under Georgia law, an "insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured." *City of Atlanta v. St. Paul Fire & Marine Ins.*, 231 Ga. App. 206, 207, 498 S.E.2d 782 (1998). "[T]he allegations of the complaint are looked to determine whether a liability covered by the policy is asserted." *Great Am. Insurance Co. v. McKemie*, 244 Ga. 84, 85, 259 S.E.2d 39 (1979). If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action. *Id*. An insurer's duty to defend is broader than its duty to indemnify." *Shafe v. American States Ins. Co.*, 288 Ga.App. 315, 317, 653 S.E.2d 315 (2007) (citing *Penn–America Ins. Co. v. Disabled American Veterans*, 224 Ga.App. 557, 559, 481 S.E.2d 850 (1997). Thus, an insurer that has no duty to defend has no duty to indemnify.

**A. Jane Doe does not allege claims that fall within the scope of Coverage A.**

The scope of Coverage A is for sums an insured becomes legally obligated to pay for "bodily injury" occurring during the policy period which is caused by an "occurrence." Thus, to potentially fall within the coverage, there must be a an alleged "occurrence" and alleged resulting "bodily injury."

1.  <u>Jane Doe does not allege claims for "bodily injury."</u>

Jane Doe's alleged injuries do not meet the definition of "bodily injury," which the Starr Policy defines as "physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress." Under Georgia law, for emotional distress to constitute "bodily injury," there must have been at a minimum some form of physical, unwanted touching. *See Nationwide Mut Fire Ins. Co. v. Somers*, 264 Ga.App. 421, 427, 591 S.E.2d 430 (2003); *Anderson v. Southern Guaranty Ins. Co. of Georgia*, 235 Ga.App. 306, 307, 508 S.E.2d 726 (1999); *O'Dell v. St. Paul Fire & Marine Ins. Co*., 223 Ga. App. 578, 579-580, 478 S.E.2d 418 (1996); *Presidential Hotel v. Canal Ins. Co.*, 188 Ga.App. 609, 611, 373 S.E.2d 671 (1988). Jane Doe does not allege any physical contact by anyone or anything. She alleges only mental anguish as a result of receiving the threatening emails and learning of the disclosure of the illegally obtained videotape of her on the internet <u>followed</u> by gastrointestinal issues and weight loss. Thus, Jane Doe does not allege "bodily injury" as defined by the Starr Policy, and the claims fall outside of Coverage A.[5]

---

[5] In addition, the Underlying Complaint does not contain any allegations of "property damage."

2.  <u>Jane Doe does not allege injuries caused by an "occurrence."</u>

The Starr Policy defines an "occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is unambiguous and "is defined as an event which takes place without one's foresight, expectation or design." *Rucker v. Columbia Nat. Ins. Co.*, 307 Ga.App. 444, 447, 205 S.E.2d 270 (2010) (citing *Nationwide & etc. Ins. Co. v. Somers*, 264 Ga.App. 421, 426, 591 S.E.2d 430 (2003)); *accord QBE Ins. Co. v. Couch Pipeline & etc.*, 303 Ga. App. 196, 198, 692 S.E.2d 795 (2010)). Policies that cover injuries caused by an accident concern an injury due to accidental means: "[O]ne that is the unexpected result of an unforeseen or unexpected act that was involuntary or unintentionally done." *Provident Life and Acc. Ins. Co. v. Hallum*, 276 Ga. 147, 148, 576 S.E.2d 844 (2003) (citing *Winters v. Reliance Standard Life Ins. Co.*, 209 Ga.App. 369, 433 S.E.2d 363 (1993)).[6] Deliberate acts with expected consequences are not accidents. *See Georgia Farm Bureau Mut. Ins. Co. v. Hall County*, 262 Ga.App. 810, 586 S.E.2d 715 (2003); *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 231 Ga.App. 206, 498 S.E.2d 782 (1998). <u>Whether the specific injuries were intended is immaterial as to whether they were the result of an accident.</u> *Meritplan Ins. Co. v. Leverette*, 552 Fed.Appx.

---

[6] This is distinguished from an accidental injury which "is an injury that is unexpected but may arise from a conscious voluntary act." *Provident Life*, supra.

900. 902 (11th Cir. 2014) (unpublished). There is no insured "occurrence" under Coverage A as concerns the vicarious liability of an employer, inclusive of negligent hiring, retention and supervision, for the non-accidental, intentional, wrongful acts of its employee as insurance policies do not cover any other claims as a concurrent cause of harm where, but for a harm that is not within the scope of the policy (i.e., intentional conduct), there would be no claim. *See Presidential Hotel*, supra at 673; *SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 181 F.3d 1210, 1216-17 (11th Cir. 2011); *Maryland Cas. Co. v. Jacob Ward MD LLC*, Case No. 1:14-CV-160-MHC; 2015 WL 11237022, *6-7 (N.D.Ga. July 31, 2015); *Maryland Casualty Co. v. Salon Avenue Suite 2*, Case No. 1:13–CV–3056–TWT; 2014 WL 4925623, *5 (N.D.Ga. Sept. 29, 2014); *ApolloMD Physician Services GA, LLC v. Traverlers Indem. Co. of Amer.*, No. 1:11-cv-3973-WSD, 2013 WL 12244918, 9 (N.D.Ga. Feb. 22, 2013).

Jane Doe alleges that she sustained her injuries due to John Doe's intentional, wrongful acts in 2015 and his intentional, wrongful acts in 2018. None of John Doe's alleged acts are accidental in nature. Jane Doe alleges that the Banyan Entities are vicariously liable for John Doe's intentional, wrongful acts (alleging the filming of Jane Doe was done within the scope of his employment) inclusive of the Banyan Entities negligence in hiring and supervising John Doe and

allowing him to create an unsafe condition in the hotel room by placing his camera in the bathroom.

Any liability of the Banyan Entities is premised on John Doe's alleged intentional wrongful acts. Thus, the claims against the Banyan Entities do not fall within Coverage A because they were not caused by an "occurrence."

**B. Exclusion o. precludes coverage under Coverage A.**

Exclusion o. "Personal and Advertising Injury" states that there is no coverage for "'[b]odily injury' arising out of 'personal and advertising injury'." The Policy defines "personal and advertising injury" to include "injury, <u>including consequential</u> 'bodily injury,' arising out of one or more of the following offenses," including the "invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor" or "[o]ral or written publication, in any manner, of material that violates a person's right of privacy" (emphasis added).

In Georgia, the phrase "arising out of" is given broad meaning even in the context of an exclusion. *Fireman's Fund Ins. Co. v. UGA Athletic Ass'n Inc.*, 288 Ga.App. 355, 366, 654 S.E.2d 207 (2007). Exclusions with such language apply if "but for" the excluded act there would be no claim against the insured. *Id.* (citing *Continental Ca. Co. v. HIS Financial Svcs.*, 266 Ga. 260, 466 S.E.2d 4 (1996)).

Jane Doe's claims are based upon John Doe recording her while nude in the shower without her consent and publishing the video of her naked image on various websites and to people that she knew. She does not allege that John Doe physically assaulted her. Although she alleges that she suffered injuries because she suffered weight loss, gastritis, insomnia and dermatological issues, as pled, those alleged injuries occurred after she became aware of the publication of the video and were caused by or as a consequence of that alleged invasion of privacy, *i.e.*, "personal and advertising injury." *See Cabaniss v. Hipsley*, 114 Ga.App. 367, 151 S.E.2d 496 (1966) (providing examples of cases involving the invasion of the right of privacy including where eavesdropping equipment was placed in plaintiff's hospital room). Stated differently, "but for" the alleged invasion of her right of privacy through recording her without her consent and publishing that video of her, Jane Doe would not have suffered any alleged injuries. Thus, even if, for any reason, the Court found her alleged injuries constitute "bodily injury" caused by an "occurrence," Exclusion o. "Personal and Advertising Injury" would preclude coverage under Coverage A, as any "bodily injury" arose out of "personal and advertising injury." *See CMS Security, Inc. v. Burlington Ins. Co.*, No. c-09-2217, 2010 WL 11545578, *2 (N.D.Cal. Feb. 23, 2010).

**C. Jane Does' claims do not fall within Coverage B of the Starr Policy.**

To be covered under Coverage B, the injuries claimed by Jane Doe initially must fall within the definition of "[p]ersonal and advertising injury" **and** the "personal and advertising injury" must be "caused by an offense arising out of your business but only if the offense was committed in the coverage territory during the policy period" (emphasis added).

As pled, Jane Doe alleges two distinct periods during which alleged acts occurred upon which she bases her claim: July 2015, when she was in the hotel room and John Doe invaded her privacy by illegally videotaping her and 2018, when John Doe invaded her right of privacy by posting the video of her personal image on the internet and criminally attempting to extort her.

There are no allegations that part of the legitimate business of the Banyan Entities is placing hidden cameras in guest's bathrooms to film them in the shower, nor is that a reasonable construction of the pleadings. *See Salon Avenue Suite 2,* supra (finding that allegation of videotaping women in various states of undress is not a legitimate part of the Salon's business so the claimed injury did not arise out of the insured's business to be covered under Coverage B).

However, even if the allegations, however implausible, are construed to mean John Doe *on behalf of* the Banyan Entities *as part of their business* placed a

camera in the hotel bathroom and filmed Jane Doe nude in bathroom, there is no question that this purported activity is specifically alleged to have occurred in 2015. Thus, the  invasion of Jane Doe's privacy in 2015 and the capturing of her personal image on video or other media (which is the necessary "offense" underpinning all her claims), was not an offense "committed . . . during the policy period" of the Starr Policy, which incepted July 31, 2018, and any damages as a result of such offense do not fall within the coverage of Coverage B. *See Nationwide Prop. & Cas. Ins. Co. v. Sewell Vault and Monument, Inc.*, No. 3:11-cv-92-TCB, 2012 WL 13028694 (N.D.Ga. Feb. 13, 2012) (finding no coverage because offense occurred prior to the inception of the policy).

Turning to the time period of relevance for the Starr Policy, while Jane Doe in the beginning of the Complaint asserts a broad allegation that "*[a]t all material times referred to in this Complaint, John Doe was conducting himself in the normal course of business acting within the scope of his employment with one or more of the named Defendants*" (Underlying Complaint, ¶ 8), Jane Doe does not affirmatively allege that John Doe was an employee of the Banyan Entities in 2018 or that he was acting in the scope of his employment with them in 2018 when he published the video on the internet and conducted his blackmail campaign against Jane Doe. To the contrary such actions by John Doe in 2018 are clearly of a sick,

personal motive, illegal and far beyond any legitimate business purpose. Jane Doe does not allege that during 2018 the Banyan Entities participated in any of the criminal acts of John Doe or that his illegal acts in 2018 were in any manner known and permitted by them or done by or on their behalf.

Pointedly, there is no allegation that the Banyan Entities published the video in 2018. Absent an insured under the Starr Policy having published the material during the policy period so as to have committed an offense, coverage for "Personal and advertising injury" is not triggered.[7] *See St. Paul Fire & Marine Ins. Co. v. Rosen Millennium, Inc.*, 337 F.Supp.3d 1176 (M.D. Fla. 2018) (finding that the insured had to be the publisher for coverage to be triggered); *Innovak International, Inc. v. Hanover Ins. Co.*, 280 F.Supp.3d 1340 (M.D. Fla 2017) (stating "the only plausible interpretation of the [insurance policy] is that it requires the insured to be the publisher of the [private information]").

Because the Banyan Entities are not alleged to have published the offending material and because John Doe's illegal publications and criminal extortion emails in 2018 are not alleged as "offenses" arising *out of the business of* the Banyan Entities (and which cannot reasonably be construed to be "offenses arising out of

---

[7] John Doe would qualify as an insured in 2018 only if he was an employee of the Banyan Entities and only for acts within the scope of his employment. (Starr Policy, Section II,2.(a).

their business) and the Banyan Entities are not alleged to have committed any offense during the policy period, there is no coverage under Coverage B for any damages as a result publications by John Doe in 2018. *See Salon Avenue Suite 2,* supra.

If the allegations could be construed as John Doe having committed an offense during the policy period, which arose out of the Banyan Entities' business, then Exclusion a. "Knowing Violation of Rights of Another" and Exclusion d. "Criminal Acts" would preclude coverage. If the acts of John Doe making the video available on the internet and sending threatening, extortionist emails to Jane Doe, which are without a doubt criminal acts that violated her rights,[8] were part of the Banyan Entities' legitimate business purpose, then those acts must have been undertaken with the knowledge and consent of the Banyan Entities, as one could not have sent the threatening, extortionist emails and posted the naked images of Jane Doe on the internet without her consent without knowing that they were committing criminal acts or violating her rights. Thus, coverage would be precluded.

---

[8] *See e.g.*, N.Y. PENAL CODE § 155.05; 18 U.S.C. § 875.

**D. The Access Or Disclosure Endorsement precludes coverage under Coverage A and Coverage B.**

Coverage A and Coverage B are subject to the exclusionary terms of the Access Or Disclosure Endorsement that provides the coverages *do not apply* to damages <u>arising out of any access to or disclosure of any person's personal information or "any other type of nonpublic information</u>" (emphasis added). *See Cooper v. Westfield Ins. Co.*, 488 F.Supp.3d 430 (S.D.W.Va. 2020) (finding the exclusion to apply unambiguously regardless of intent of actor); *State Auto Prop. and Cas. Ins. Co. v. Campbell*, Case No. 5:18-cv-173; 2020 WL 8188426 (N.D.W.Va. April 17, 2020) ("The language of the Policy is unambiguous that the mere access, regardless of intent, of an individual's confidential or personal information is excluded").

Jane Doe alleges that John Doe illegally gained access to Jane Doe's naked image and disclosed her naked image with reference to her name on porn sites and to others. Jane Doe's naked image linked to her name is indisputably "nonpublic information" and protected personal information. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn. 1998) (recognizing tort of invasion of privacy and stating, "One's naked body is a very private part of one's person and generally known to others only by choice. This is a type of privacy interest worthy of protection"). Furthermore, Jane Doe alleges that an integral part of her claim is that

22

John Doe improperly obtained access to her name, addresses, email and other personal data information linked to the specific date and specific room that she stayed in at the Hotel, which was non-public information. Having this nonpublic information and the confidential video of her nude in the shower gave John Doe the ability to disclose the private image and private information by posting the video with her name referenced and then later track down Jane Doe and conduct a blackmail campaign against her. Thus, the Access Or Disclosure Endorsement precludes coverage under Coverage A and Coverage B for all of Jane Doe's injuries.

### E. The Violation Of Statutes Endorsement precludes coverage under Coverage A and Coverage B.

Coverage A and Coverage B are subject to the Violation Of Statutes Endorsement, which states that the coverages do not apply to "bodily injury" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate any statute, ordinance or regulation of any federal, state, or local government that addresses or applies to sending, transmitting or communicating of any material or information by any means whatsoever."

After John Doe allegedly gained unauthorized access to Jane Doe's naked image with her full name, address and date and room of her stay, he then used that

information through internet transmissions in an effort to extort money from Jane Doe: "A little bit of money and it all goes away." He also posted the illegally obtained footage of her private image on public internet pages.

John Doe's alleged transmissions of his emails and publications of her video whereby he attempted to extort from Jane Doe additional video or pictures of her nude and money are all acts in violation of federal and state statutes and regulations. For example, New York, where the Hotel is located, criminalizes the dissemination of an unlawful surveillance image. N.Y. PENAL CODE § 250.45 and 55. New York also has a statutory right of privacy. N.Y. CIV. RIGHTS CODE § 50. The statute criminalizes a person who uses an individual's image for commercial exploitation without that subject's written consent. New York criminalizes extortion. N.Y. PENAL CODE § 155.05(e). Blackmail is also a federal crime. 18 U.S.C. § 875. The alleged conduct falls squarely within terms of the Violation Of Statutes Endorsement whether Jane Doe sustained her injuries in 2015 or later in 2018; thus, coverage is precluded. *See Steadfast Ins. Co. v. Tomei*, Case No. 477 WDA 2015; 2016 WL 2989982 (Pa.Super. May 24, 2016) (finding that exclusion for distribution of material in violation of any statute, ordinance or regulation that prohibits the sending, transmitting, communicating or distribution

of material applied to claims based on the secret recording of and posting of nude videos on the internet).

## IV.   <u>Conclusion</u>

For the reasons stated above, Starr has no duty under the Starr Policy to defend or indemnify the Banyan Entities from the claims asserted in the Underlying Complaint, and Starr respectfully requests the Court to grant its Motion for Summary Judgment as to the Banyan Defendant's Third-Party Complaint and Starr's Third-Party Counterclaim and Crossclaim, declaring that Starr has no duty to defend or indemnify the Banyan Entities from the claims asserted in the Underlying Complaint.

Respectfully submitted this 23rd day of September, 2021.

HALL BOOTH SMITH, P.C.

/s/Thomas K. Wingfield
C. Michael Johnson
Georgia Bar No. 392550
Thomas K. Wingfield
Georgia Bar No. 770653

191 Peachtree Street, NE
Suite 2900
Atlanta, GA  30303-1775
Phone:  404-954-5000
mjohnson@hallboothsmith.com
twingfield@hallboothsmith.com        *Counsel for Starr Indemnity & Liability*
                                      *Company*

25

## <u>LR 7.1 CERTIFICATE OF COMPLIANCE</u>

Counsel certifies, pursuant to LR 7.1 that the forgoing Memorandum of Law has been prepared using Times New Roman (14 point font) and complies with the formatting requirements of LR 5.1

*/s/Thomas K. Wingfield*
Thomas K. Wingfield
Ga. Bar No. 770653

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this day I served the foregoing **THIRD-PARTY DEFENDANT STARR INDEMNITY & LIABILITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON BANYAN TREE MANAGEMENT, LLC AND ALBANY DOWNTOWN HOTEL PARTNERS, LLC'S THIRD-PARTY COMPLAINT AND ITS THIRD-PARTY COUNTERCLAIM AND CROSSCLAIM AGAINST JANE DOE** by serving all counsel of record via electronic filing through NextGen portal with the United States District Court for the Northern District of Georgia to the following:

Joel Scott Isenberg, Esq.
Kenneth W. Boyles, Jr., Esq.
Susan Haygood McCurry, Esq.
**ELY & ISENBERG, LLC**
Suite 380, 2100B SouthBridge Parkway
Birmingham, AL  35209
jisenberg@elylawllc.com
kboyles@elylawllc.com
smccurry@elylawllc.com

*Counsel for Citizens Insurance Company of America – And – Massachusetts Bay Insurance Company*

Spencer McCartney Taylor, I, Esq.
**BARZE TAYLOR NOLES LOWTHER LLC**
2204 Lakeshore Drive
Suite 330
Birmingham, AL  35209
staylor@htnllaw.com

*Counsel for Banyan Tree Management, LLC – And – Albany Downtown Hotel Partners, LLC*

Charles L. Clay, Jr., Esq.
**PRATT CLAY, LLC**
4401 Northside Parkway, N.W.
Suite 520
Atlanta, GA  30327
chuck@chuckclay.com

*Counsel for Jane Doe*

Shattuck Ely, Esq.
Derek Schwahn, Esq.
**FELLOWS LA BRIOLA, LLP**
225 Peachtree Street, N.E.
South Tower, Suite 2300
Atlanta, GA  30303-1731
dschwahn@fellab.com
tely@fellab.com

*Counsel for Banyan Tree Management, LLC – And – Albany Downtown Hotel Partners, LLC*

Richard Hoyle Hill, Jr., Esq.
**MABRY & MCCLELLAND**
2200 Century Parkway, N.E.
Tenth Floor
Atlanta, GA  30345-3105
rhill@m-mlegal.com

*Counsel for Westfield Insurance Company*

Micajah D. Boatright, Esq.
Roland T. Christensen, Esq.
**ARNOLD & ITKIN- TX**
6009 Memorial Drive
Houston, TX 77007
Cboatright@arnolditkin.com
Rchristensen@arnolditkin.com

*Counsel for Jane Doe*

This 23rd day of September, 2021.

**HALL BOOTH SMITH, P.C.**

*/s/Thomas K. Wingfield*
Thomas K. Wingfield
Georgia Bar No. 770653

*Counsel for Starr Indemnity & Liability Company*

# EXHIBIT "1"





| | |
|---|---|
| **Entity Name:** | **Banyan Tree Management, LLC** |
| **Jurisdiction:** | GA |
| **Date:** | 7/9/2019 |
| **Receipt Method:** | Process Server |
| **Case Number:** | 19-C-04673-S3 |
| **Plaintiff:** | JANE DOE |
| **Defendant:** | BANYAN TREE MANAGEMENT, LLC |
| **Document Type:** | Summons & Complaint |

# Exhibit 1

FILED IN OFFICE
CLERK OF STATE COURT
GWINNETT COUNTY, GEORG
**19-C-04673-S**
7/2/2019 10:58 AI

IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

*[signature]*
CLERK OF STATE COURT

**Jane Doe**

_____

_____

_____

CIVIL ACTION
NUMBER: **19-C-04673-S3**
_____

PLAINTIFF

VS.

**Banyan Tree Management, LLC**

_____

_____

_____

DEFENDANT

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Charles L. Clay, Jr. - Pratt Clay, LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _____**2ND**_____ day of _____**JULY**_____, 20__**19**__.

Richard T. Alexander, Jr.,
**Clerk of State Court**

By *[signature]*
**Deputy Clerk**

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

SC-1 Rev. 2011

# Exhibit 1

E FILED IN OFFICE   A
GWINNETT COUNTY, GEORG
**19-C-04673-S**
**7/2/2019 10:58 AI**

CLERK OF STATE COUR

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| JANE DOE, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION FILE NO. |
| | § | **19-C-04673-S3** |
| BANYAN TREE MANAGEMENT, LLC; | § | |
| ALBANY DOWNTOWN HOTEL | § | |
| PARTNERS, LLC; and JOHN DOE, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

### COMPLAINT

COMES NOW Plaintiff Jane Doe in the above-styled action, and hereby files her

Complaint as follows:

### I.

### NATURE OF THE CASE

1.     Plaintiff, Jane Doe, was a paying guest at the Hampton Inn and Suites Albany-

Downtown (hereinafter "Hampton Inn-Albany") in Albany, New York. While Plaintiff was in the

privacy of her hotel room, she was secretly recorded fully nude showering in the bathroom.

Plaintiff was then extorted and blackmailed with the videos. The videos were then published online

to numerous pornographic websites, and viewed thousands of times. The videos were also sent to

Plaintiff's colleagues, in an attempt to coerce her to pay money and/or send additional nude

pictures and videos of herself to the extorter. During the relevant events, Banyan Tree

Management, LLC managed the Hampton Inn-Albany, and Albany Downtown Hotel Partners,

LLC owned the Hampton Inn-Albany. These egregious privacy violations have caused Plaintiff to

# Exhibit 1

suffer humiliation and substantial damages, and as a consequence she brings this suit against Banyan Tree Management, LLC, and Albany Downtown Hotel Partners, LLC.

## II.

### JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this matter pursuant to Section 14-2-510 of the Georgia Code because Defendant Banyan Tree Management, LLC's registered agent is located Gwinnett County and joint tortfeasor Albany Downtown Hotel Partners, LLC is run and operated out of Atlanta, Georgia in Fulton County. Additionally, the owners (members) of these entities reside here in Atlanta, Georgia, in Fulton County. Further, the nerve centers, where all decision makers are located for Banyan Tree Management, LLC and Albany Downtown Hotel Partners, LLC are also here in Atlanta, Georgia, in Fulton County. Thus, both Banyan Tree Management, LLC and Albany Downtown Hotel Partners, LLC are subject to the Court's general jurisdiction. Specifically, the Operating Agreement for the Hampton Inn-Albany (executed between Banyan Tree Management, LLC and Albany Downtown Hotel Partners, LLC) was executed by Rakesh Chauhan as the manager of Chapel ST MM Partners, LLC (the managing member of Albany Downtown Hotel Partners, LLC). Rakesh Chauhan is the President and CEO of Banyan Investment Group, is the manager for Banyan Tree Management, LLC, and is a resident of Fulton County, Georgia. Banyan Management and Albany Hotel Partners are largely owned and operated by the same group of individuals, many of which are located here in Atlanta, Georgia in Fulton County.

3.      Additionally, the direction, supervision, and operation of the Hampton Inn-Albany is performed by Banyan Tree Management, LLC through its executives and decision makers here in Atlanta, Georgia in Fulton County.

# Exhibit 1

4.      Removal of this case is not permitted because both Banyan Tree Management, LLC and Albany Downtown Hotel Partners, LLC are forum defendants, since they have members who are Georgia citizens and therefore diversity of jurisdiction is lacking.

### III.

### THE PARTIES

5.      The Plaintiff, Jane Doe,[1] is resident of Chicago, Illinois.

6.      Defendant Banyan Tree Management, LLC ("Banyan Management") is a Florida limited liability company. The executives, decision makers, and owners of Banyan Management are located in Atlanta, Georgia. Banyan Management is run from Atlanta, Georgia, Fulton County. For purposes of diversity citizenship, Banyan Management is a citizen of Georgia because multiple members are from Georgia. Banyan Management can be served with process through its registered agent: Paracorp Incorporated, at 368 W. Pike Street, Suite #104, Lawrenceville, GA, 30046, USA (Gwinnett County, GA).

7.      Defendant Albany Downtown Hotel Partners, LLC ("Albany Hotel Partners") is a Delaware limited liability company. The executives, decision makers, and owners for Albany Hotel Partners are located in Atlanta, Georgia. Albany Hotel Partners is run from Atlanta, Georgia, Fulton County. For purposes of diversity citizenship, Albany Hotel Partners is a citizen of Georgia because multiple members are from Georgia. Albany Hotel Partners can be served with process

---

[1] Due to the significant privacy violations Plaintiff has already endured as a result of the negligent and grossly negligent conduct of Defendants, Plaintiff is bringing this suit as "Jane Doe." Proceeding as Jane Doe in this case comports with the analytical framework set forth in *Doe v. Archdiocese of Atlanta*, 761 S.E.2d 864 (Ga. Ct. App. 2014). Specifically, given the egregious and embarrassing nature of the underlying incident, Plaintiff will be harmed further by proceeding in her full name. Further, given the history of the harassment Plaintiff has already endured with escalating threats and posting of the video of her online, proceeding in her full name would pose a risk of retaliatory physical or mental harm to Plaintiff. Additionally, there is no unfairness to the parties by Plaintiff proceeding as Jane Doe because the Defendants are already aware of Plaintiff's full name and identity. In fact, the Defendants have been provided with copies of the videos taken of Plaintiff and are fully aware of the facts and circumstances alleged in this lawsuit. Finally, Plaintiff is willing to submit her full name to the Court under seal should the Court desire it.

3

# Exhibit 1

through its registered agent: Paracorp Incorporated, at 2140 S. Dupont Hwy., Camden, Delaware 19934. Defendant Banyan Tree Management, LLC, Defendant Albany Downtown Hotel Partners, LLC and Defendant John Doe are joint-tortfeasors and may be subject to venue in any county in which one or more of them reside pursuant to O.C.G.A. § 9-10-31.

8.      Defendant John Doe is believed to be an employee or agent of Defendants with an unknown physical residential address.  At all material times referred to in this Complaint, John Doe was conducting himself in the normal course of business acting within the scope of his employment with one or more of the named Defendants.  Defendant Banyan Tree Management, LLC, Defendant Albany Downtown Hotel Partners, LLC and Defendant John Doe are joint-tortfeasors and may be subject to venue in any county in which one or more of them reside pursuant to O.C.G.A. § 9-10-31.

## IV.

### FACTUAL BACKGROUND

#### *Facts Relating to the Unauthorized Recording of Plaintiff*

9.      In July of 2015, Plaintiff paid for a room at the Hampton Inn-Albany in Albany, New York. At the time, Plaintiff had just graduated from law school and was staying in Albany to prepare for and take the New York bar exam. Plaintiff was a registered guest staying at the Hampton Inn-Albany during her time in Albany during the bar exam.

10.     Unbeknownst to Plaintiff, and without her consent, Plaintiff was recorded by a hidden video camera while fully nude in the shower.

11.     Plaintiff did not realize that she was recorded until September 30, 2018, when she received an email stating "*this is you right?*" which included a link to a video posted on a pornographic video website smutr.com. The link went to a video publicly available on the Internet

4

# Exhibit 1

titled "[Jane Doe] Bathroom Voyeur Cam – 2." The title of the video contained Plaintiff's full name.

    12.    Plaintiff viewed the video and it indeed was herself showering in the Hampton Inn-Albany. The video shows Plaintiff fully nude and is multiple minutes long.

    13.    The following is a screenshot from the video taken of Plaintiff and also another picture of the bathroom setup in the Hampton Inn-Albany. The two are a near-perfect match:

| Screenshot from Video of Plaintiff | Photo of Hampton Inn-Albany Bathroom |
| --- | --- |



    14.    That same night, Plaintiff received another email from the same sender with specific personal details about Plaintiff including where she attended university, that she had taken

# Exhibit 1

the New York bar exam, and where Plaintiff worked. In that same email the sender said, "*I don't want to embarrass you please reply.*"

15.     On October 1, 2018, Plaintiff received another email from the same sender stating: "*I'm a perv. I don't hurt anyone. I like to watch. No need to worry about me I just like to watch and then I move on to the next.*"

16.     Later that day on October 1, 2018, Plaintiff received another email from the same sender stating: "*Promise me my own show. That's the hottest. No need to show your face. Then I disappear and remove the videos forever before they get copied on every website.*"

17.     Without responding, Plaintiff received another email from the same sender on October 1, 2018, stating: "*Are you here still? I know it's you. I don't want to embarrass you. Please reply before it's too late to stop it.*"

18.     Just minutes later, the video of Plaintiff, once again with her full name, was posted on the website pornhub.com.

19.     In the early evening of October 1, 2018, Plaintiff received another email from the same sender now threatening: "*You have until midnight to send me something good. Or I will post videos, your name, info everywhere. Then I send to people you know. You can enjoy being famous.*"

20.     Plaintiff did not respond to the threats.

21.     On October 11, 2018, the video of Plaintiff was posted to the following pornographic websites—each time with Plaintiff's full name in the video title:

        a.     redtube.com

        b.     xvideos.com

        c.     xnxx.com

        d.     pornhub.com (again)

6

# Exhibit 1

22.     Throughout this time Plaintiff was trying to get the websites to remove the video. Some websites temporarily removed the video, others did not.

23.     On October 19, 2018, Plaintiff received another email from the same sender stating: "*Why'd you take down my video??? It's ok it's already up on a bunch of sites lol. You already hit 1000 views on one. Just sent you in to a new one. Want (sic) to know which one? Do you want me to stop?*"

24.     The next day, on October 20, 2018, Plaintiff received another email from the same sender stating: "*Round 2 starts today. This time I start by emailing people you know. You think you're better than other people but you're just a whore. Eiher (sic) we talk or this goes out. Either you be my bitch or [Jane Doe] will be everbody's (sic) bitch. Be smart.*" Attached to the email was a photo of Plaintiff fully nude in the shower.

25.     On October 26, 2018, in the afternoon Plaintiff began receiving emails from colleagues, friends, and former classmates. The emails being forwarded to her by her friends and work associates were sent by an email address set up in Plaintiff's name (but it was not Plaintiff's email address nor was it Plaintiff sending the emails), and the emails sent directly to Plaintiff's friends and colleagues said the following:

> *Subject: Help with Art Project*
> *Dear Friends,*
> *Hi all! Hope you are all well. As the subject line says, I am trying to recruit some friends to help out a friend's art project (for which I got to be the model!! ☺)))*
> *It's a little daring (trust me) but you can decide that. Let me know what you think and leave a like!*
> *Here is the vimeo link: vimeo.com[2]*

---

[2] Plaintiff has removed the specific link from the Complaint, but the video was posted to popular video-sharing website, vimeo.com.

**Exhibit 1**

26.    The emails sent to Plaintiff's friends and colleagues appeared to be sent from Plaintiff given that the new email address was set up in her name. Throughout the afternoon on October 26, 2018, Plaintiff was forwarded these emails from numerous friends and colleagues.

27.    The link included in these emails included a new version of the video of Plaintiff, and the video included Plaintiff's full name in both the video title and the video itself.

28.    On the evening of October 26, 2018, Plaintiff received another email from the same sender who had been communicating with her previously stating the following:

> *Time to talk yet?*
>
> *Maybe check out Vimeo for the video projects I uploaded of you. Search your name. All those views are people you know. HUNDREDS. Some maybe watched more than once ☺ You want this to stop. You want me to stop. Right? Do I need more from you?*
>
> *Maybe you're ready. I can do that.*
>
> *A little bit of money and it all goes away.*
>
> *$2,000 USD TODAY. Then $1,000 USD each month for one year. You pay some now, a little later, and some after that. First payment and I stop the videos. Second payment less money, stay quiet. Third payment, stay quiet. You're buying peace. Easy right? Reply and then you get the BITCOIN address. So easy.*

29.    Plaintiff did not give in to the demands, and the video of Plaintiff has continued to be posted online on various websites. At present, the video of Plaintiff (each time with her full name) has been posted on the following websites at least once (and in many instances multiple times):

     a.    Pornhub.com (numerous postings)

     b.    Pornhub.com (Spanish)

     c.    Redtube.com

     d.    Xvideos.com

     e.    Xnxx.com

# Exhibit 1

    f.      Smutr.com

    g.     Thumbzilla.com

    h.     Pornado.co

    i.      Sexer.cz

    j.      Big-boob-porn.com

    k.     Alohatube.com

    l.      Motherless.com

    m.    Tubesafari.com

30.    Many of these websites pay for user-generated and user-posted content. Those who post videos to the sites receive monetary compensation, often in proportion to the number of views the video generates. Because the videos of Plaintiff have been viewed many times (over a thousand) it is highly probable the posters of the videos have received monetary compensation based on the videos of Jane Doe.

31.    In an exhausting cycle of humiliation, Plaintiff has been, and continues to be, forced to constantly monitor online sites (including pornographic sites) for when additional postings are made online to attempt to remove the video.

### *Relationship of Defendants*

32.    The Defendants are related in the following manner:

33.    The Hampton Inn-Albany—where the unauthorized video recording occurred—is a Hilton property that is managed and operated by Defendant Banyan Management. Banyan Management is the hotel management company that provides management services, training, and oversight to the hotel.

# Exhibit 1

34.     Albany Hotel Partners is the ownership entity that owns the actual Hampton Inn-Albany hotel.

35.     Albany Hotel Partners hired Banyan Management to operate, direct, and supervise the activities at the Hampton Inn-Albany where the incident occurred. Banyan Management had the sole and exclusive right to operate, direct, and supervise the operations of the Hampton Inn-Albany at the time of the incident.

36.     Some of Banyan Management's responsibilities as the supervisor, operator, and manager of the Hampton Inn-Albany were to:

    a.  Determine and create all personnel policies and procedures;

    b.  Oversee the hiring, recruiting, and discharge of all employees necessary to operate the Hampton Inn-Albany;

    c.  Establish all pricing for guest rooms;

    d.  Negotiate contracts for the hotel for services like utilities, cable, internet, cleaning, and elevator maintenance, among other things;

    e.  Procure and maintain all required licenses to allow for the operation of the hotel;

    f.  Establish administrative policies for the operation of the Hampton Inn-Albany;

    g.  Procure all necessary operating equipment and supplies to operate the Hampton Inn-Albany;

    h.  Perform advertising and promotions for the Hampton Inn-Albany;

    i.  Open and maintain bank accounts for the Hampton Inn-Albany;

    j.  Plan, execute, and supervise maintenance at the Hampton Inn-Albany;

    k.  Operate the Hampton Inn-Albany in compliance with the franchise agreement between the Hampton Inn-Albany and Hilton;

10

# Exhibit 1

37.     The management and operation of the Hampton Inn-Albany was under the supervision and control of Banyan Management.

38.     Banyan Management also had absolute discretion and control over all personnel matters and over personnel employed at the Hampton Inn-Albany. Banyan Management even had discretion and control over the hotel employees who were employed by Albany Hotel Partners at the Hampton Inn-Albany.

39.     Banyan Management had total control over decisions regarding hiring, promoting, transferring, compensating, supervising, terminating, directing, and training all employees at the Hampton Inn-Albany. Banyan Management also had control over, and was responsible for, establishing and maintaining all policies and procedures relating to employment of individuals at the Hampton Inn-Albany.  In fact, Banyan Management's control was so extensive over the employees at the Hampton Inn-Albany that even Albany Hotel Partners was prohibited from directly exercising authority over or interfering with any personnel employed at the Hampton Inn-Albany other than approving the hiring of the general manager and sales director for the hotel. Everything else regarding the employees at the Hampton Inn-Albany was under the control of Banyan Management.

### John Doe and the Recording of Plaintiff and Others

40.     Plaintiff was recorded by a hidden camera in the bathroom of the private hotel room she paid to stay in at the Hampton Inn-Albany.

41.     The individual or individuals who recorded Plaintiff knew which room she stayed in, knew her full name, and knew her personal email address. This information was provided to the Hampton Inn-Albany upon check-in to Plaintiff's room.

11

# Exhibit 1

42.     Plaintiff has discovered evidence that other individuals were also recorded in the same room at the Hampton Inn-Albany. Some of these individuals may have become aware of the recording after interactions like Plaintiff experienced above. However, many of these individuals are likely not yet aware that they were recorded in the bathroom and shower of the same room that Plaintiff stayed in.

43.     To have access to personal information (full name, email address, etc.) the individual performing the unauthorized recording would have to be an employee of the hotel or someone with direct access to the rooms.

44.     As neither Plaintiff nor Defendants have identified the precise identity of the perpetrator at this time, Plaintiff brings claims against John Doe.

45.     John Doe at the time of the recording of Plaintiff was an employee of one or more of the Defendants named in this suit.

46.     The conduct of John Doe was reckless, meaning that John Doe had the specific purpose of inflicting emotional distress or intended the conduct (recording Plaintiff nude in the shower) would likely result in severe emotional distress to Plaintiff. John Doe's conduct in this regard was outrageous and intolerable and it offends the generally accepted standards of decency and morality. Specifically, filming someone nude, without their consent, in their hotel room is repulsive and offensive behavior and is not at all accepted by society. Additionally, there is a causal connection between John Doe's conduct and Plaintiff's emotional distress. Namely, Plaintiff did not suffer from any type of remotely similar emotional distress until after she became aware of John Doe's recording of her fully nude in her hotel bathroom. Additionally, the emotional distress suffered by Plaintiff severe. She has had numerous instances where she has not been able to leave her apartment after this incident because of the emotional distress she is in. Further, Plaintiff has

# Exhibit 1

been physically harmed as well. Since the incident she has sustained significant gastrointestinal issues and has lost over 30 pounds to date. Plaintiff did not have these problems prior to this incident.

## V.

## CLAIMS

### General Allegations

47.     At all material times, Defendants Banyan Management and Albany Hotel Partners owned, controlled, operated, and/or managed the premises of the Hampton Inn-Albany, and had the legal duty to keep the premises in a state consistent with due regard for the safety of its invitees, including Plaintiff.

48.     Defendants breached the duty owed to Plaintiff by failing to exercise ordinary care to keep the premises safe.

49.     Prior to when the illicit recordings of Plaintiff occurred, the Hampton Inn-Albany premises was negligently maintained, inspected, secured, patrolled, and managed. Defendants had knowledge, both actual and constructive, of the need to properly maintain, secure, inspect, patrol, and manage the premises, but failed to exercise ordinary care.

50.     Defendants were negligent in failing to maintain, inspect, secure, patrol, and manage the premises, and negligently hired, retained, supervised, entrusted, and trained employees at the property, thereby creating an unreasonable risk of injury to invitees, including Plaintiff.

### COUNT I: *Negligence Against Banyan Tree Management, LLC*

51.     Plaintiff re-alleges and re-affirms the allegations contained in the paragraphs set forth above.

13

# Exhibit 1

52.     Defendant Banyan Management owed a non-delegable duty of reasonable care to Plaintiff to ensure that Plaintiff was safe and her privacy was maintained while she stayed at the Hampton Inn-Albany.

53.     Defendant Banyan Management was negligent and breached the duty owed to Plaintiff in several respects, and is directly liable for those acts including but not limited to:

a.      Failed to provide Plaintiff with a safe room;

b.      Failed to perform adequate inspections of the rooms to ensure hidden cameras were not present;

c.      Failed to perform adequate training of personnel to ensure that hazards like the hidden cameras would be identified;

d.      Failed to identify that there was a hazardous situation where the privacy of guests could be severely violated at the hotel;

e.      Failed to enforce its adequate privacy policies at the hotel to protect Plaintiff's information she used to check into the hotel with;

f.      Failed to properly train its employees;

g.      Failed to properly train its employees of Albany Hotel Partners, including failure to adequately train the general manager of the hotel in question;

h.      Failed to properly supervise its employees and the employees of Albany Hotel Partners;

i.      Failed to properly supervise the hotel;

j.      Negligently hired John Doe;

k.      Negligently trained John Doe;

l.      Negligently supervised John Doe;

14

**Exhibit 1**

m.     Failed to provide adequate safety and security equipment and measures for the rooms at the Hampton Inn-Albany;

n.     Failed to maintain the Hampton Inn-Albany in a safe condition;

o.     Failed to require Albany Hotel Partners to maintain the Hampton Inn-Albany in a safe condition;

p.     Had either actual or constructive knowledge of the unsafe conditions at the hotel;

q.     Failed to institute adequate policies and procedures that would have prevented this incident from occurring;

r.     Violated applicable industry standards and regulations with regard to maintaining a safe hotel premises for a paying guest; and

s.     Other various actions and inactions deemed negligent and grossly negligent.

54.     Additionally, Banyan Management was negligent, breached the duty owed to Plaintiff in several respects, and thus is vicariously liable for those acts including but not limited to:

a.     Is vicariously liable for its employees' negligence;

b.     Is vicariously liable for Albany Hotel Partners' negligence;

c.     Is vicariously liable for John Doe's conduct that occurred during the course and scope of his employment with the Banyan Management; and

d.     Had actual and/or constructive notice of its unsafe premises.

55.     As a direct and proximate result of the Banyan Management's negligence, both direct and vicarious, Plaintiff has sustained severe and permanent psychological injuries, which resulted in severe mental anguish, emotional distress and other damages recognized and provided

# Exhibit 1

for under Georgia law. Further, as a direct and proximate result of the Banyan Management's negligence, Plaintiff also incurred past, present and future medical and pharmaceutical expenses and suffered a loss of earnings in the past, present and future. Finally, Plaintiff has suffered physical injury as well from the underlying event. She has sustained severe gastrointestinal issues and to date has lost over 30 pounds.

COUNT 2: <em><u>Negligence Against Albany Downtown Hotel Partners, LLC</u></em>

56.     Plaintiff re-alleges and re-affirms the allegations contained in the paragraphs set forth above.

57.     Albany Hotel Partners owed a non-delegable duty of reasonable care to Plaintiff to ensure that Plaintiff was safe and her privacy was maintained while she stayed at the Hampton Inn-Albany.

58.     Albany Hotel Partners was negligent and breached the duty owed to Plaintiff in several respects, and is directly liable for those acts, including but not limited to:

  a.    Failed to provide Plaintiff with a safe room;

  b.    Failed to perform adequate inspections of the rooms to ensure hidden cameras were not present;

  c.    Failed to perform adequate training of personnel to ensure that hazards like the hidden cameras would be identified;

  d.    Failed to identify that there was a hazardous situation where the privacy of guests could be severely violated at the hotel;

  e.    Failed to enforce its adequate privacy policies at the hotel to protect Plaintiff's information she used to check into the hotel with;

16

# Exhibit 1

f.      Failed to properly train its employees, including the general manager of the hotel in question;

g.      Failed to properly supervise its employees;

h.      Failed to properly supervise the hotel;

i.      Negligently hired John Doe;

j.      Negligently trained John Doe;

k.      Negligently supervised John Doe;

l.      Failed to provide adequate safety and security equipment and measures for the rooms at the Hampton Inn-Albany;

m.      Failed to maintain the Hampton Inn-Albany in a safe condition;

n.      Had either actual or constructive knowledge of the unsafe conditions at the hotel;

o.      Failed to institute adequate policies and procedures that would have prevented this incident from occurring;

p.      Violated applicable industry standards and regulations with regard to maintaining a safe hotel premises for a paying guest; and

q.      Other various actions and inactions deemed negligent and grossly negligent.

59.      Additionally, Albany Hotel Partners was negligent and breached the duty owed to Plaintiff in several respects, and is vicariously liable for those acts, including but not limited to:

a.      Is vicariously liable for its employees' negligence;

b.      Is vicariously liable for John Doe's conduct that occurred during the course and scope of his employment with Albany Hotel Partners; and

c.      Had actual and/or constructive notice of its unsafe premises.

17

# Exhibit 1

60.     As a direct and proximate result of Albany Hotel Partners' negligence, Plaintiff has sustained severe and permanent psychological injuries, which resulted in severe mental anguish, emotional distress and other damages recognized and provided for under Georgia law.  Further, as a direct and proximate result of the Albany Hotel Partners' negligence, Plaintiff also incurred past, present and future medical and pharmaceutical expenses and suffered a loss of earnings in the past, present and future. Finally, Plaintiff has suffered physical injury as well from the underlying event. She has sustained severe gastrointestinal issues and to date has lost over 30 pounds.

### COUNT 3: *Premises Liability – Banyan Management and Albany Hotel Partners*

61.     Plaintiff re-alleges and re-affirms the allegations contained in the paragraphs set forth above.

62.     Defendants Banyan Management and Albany Hotel Partners are liable to Plaintiff under a theory of premises liability.

63.     Banyan Management and Albany Hotel Partners had knowledge, actual or constructive, that a defect existed on their property—specifically the camera in Plaintiff's bathroom at the Hampton Inn-Albany.

64.     Albany Hotel Partners had a non-delegable duty to Plaintiff to exercise ordinary care in keeping the premises safe.  O.C.G.A. § 51-3-1.

65.     The camera in Plaintiff's bathroom created an unsafe condition on the property.

66.     The camera in Plaintiff's bathroom was one of the proximate causes of Plaintiff's injuries.

67.     As a direct and proximate result of the negligence of Banyan Management and Albany Hotel Partners under a premises liability theory, Plaintiff has sustained severe and permanent psychological injuries, which resulted in severe mental anguish, emotional distress and

18

# Exhibit 1

other damages recognized and provided for under Georgia law. Further, as a direct and proximate result of the negligence of Banyan Management and Albany Hotel Partners, Plaintiff also incurred past, present and future medical and pharmaceutical expenses and suffered a loss of earnings in the past, present and future. Finally, Plaintiff has suffered physical injury as well from the underlying event. She has sustained severe gastrointestinal issues and to date has lost over 30 pounds.

### COUNT 4: *Negligence – John Doe*

68. Plaintiff re-alleges and re-affirms the allegations contained in the paragraphs set forth above.

69. John Doe was an employee of one or more of the Defendants named in this case at the time the videos were recorded of Plaintiff and other individuals at the Albany hotel.

70. John Doe, in his capacity as an employee or agent of one or more of the Defendants, had access to Plaintiff's personal information and assigned Plaintiff to the room in which the video camera was placed in the bathroom.

71. John Doe either directly recorded or facilitated the recording of Plaintiff and numerous others at the Hampton Inn-Albany while in the course and scope of his employment for one or more of the Defendants.

72. John Doe committed each of these acts while in the course and scope of his employment with Defendants and while acting as an employee of one or more of the Defendants.

73. As a direct and proximate result of the negligence of John Doe, Plaintiff has sustained severe and permanent psychological injuries, which resulted in severe mental anguish, emotional distress, and other damages recognized and provided for under Georgia law. Further, as a direct and proximate result of the negligence of John Doe, Plaintiff also incurred past, present

19

# Exhibit 1

and future medical and pharmaceutical expenses and suffered a loss of earnings in the past, present and future. Finally, Plaintiff has suffered physical injury as well from the underlying event. She has sustained severe gastrointestinal issues and to date has lost over 30 pounds.

74.     John Doe's conduct in all regards was reckless, outrageous, and unacceptable to general society.

## VI.

### DEMAND FOR JURY TRIAL

75.     Plaintiff hereby demands a jury trial on all claims.

## VII.

### PUNITIVE DAMAGES

76.     Plaintiff re-alleges and re-affirms the allegations contained in the paragraphs set forth above.

77.     Defendants' conduct showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to the consequences of their actions, and entitles Plaintiff to an award of punitive damages.

## VIII.

### EXPENSES AND ATTORNEY'S FEES

78.     Plaintiff re-alleges and re-affirms the allegations contained in the paragraphs set forth above.

79.     Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover their necessary expenses of litigation, including an award of reasonable attorney's fees and expenses

# Exhibit 1

required by this action, pursuant to O.C.G.A. § 13-6-11, as well as any other statutory or common law basis.

**IX.**

**DAMAGES**

80.     Plaintiff brings each and every claim permissible under Georgia law against Defendants, joint and severally, for her injuries suffered as a result of the incident at issue, and seeks to recover all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia Law, including, but not limited to:

     a.  All special and general damages allowed under the law;

     b.  Past and future physical pain and suffering;

     c.  Past and future mental anguish;

     d.  Past and future medical expenses;

     e.  Past and future lost wages and earning capacity;

     f.  Past and future loss of enjoyment of life;

     g.  Exemplary or punitive damages for Defendants' grossly negligent conduct;

     h.  Costs of litigation and attorney's fees;

     i.  Pre-judgment interest as provided by law;

     j.  Post-judgment interest as provided by law; and

     k.  For any such other and further relief as the Court may deem just and equitable.

# Exhibit 1

## X.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Jane Doe, demands judgment for her damages against the Defendants Banyan Tree Management, LLC; Albany Downtown Hotel Partners, LLC; and John Doe, jointly and severally.

This 2nd say of July, 2019.

Respectfully Submitted,

Charles L. Clay, Jr.
GA Bar No. 129505
chuck@prattclay.com
4401 Northside Parkway, Suite 520
Atlanta, GA 30303
Phone: 404.949.8118

-and-

Kurt Arnold
Texas Bar No. 24036150
karnold@arnolditkin.com
Caj Boatright
Texas Bar No. 24036237
cboatright@arnolditkin.com
Roland Christensen
Texas Bar No. 24101222
rchristensen@arnolditkin.com
Alison Baimbridge
Texas Bar No. 24040160
abaimbridge@arnolditkin.com
6009 Memorial Drive
Houston, Texas  77007
Telephone: (713) 222-3800
Facsimile:  (713) 222-3850
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFF**

# Exhibit 1

# EXHIBIT "2"

- "On October 1, 2018, Plaintiff received another email from the same sender stating: "'*I'm a perv. I don't hurt anyone. I like to watch. No need to worry about me 1 just like to watch and then I move on to the next*." (Underlying Complaint, ¶ 15) (italics in original)

- "Later that day on October 1, 2018, Plaintiff received another email from the same sender stating: '*Promise me my own show. That's the hottest. No need to show your face. Then 1 disappear and remove the videos forever before they get copied on every website.*'" (*Id*. at ¶ 16) (italics in original)

- "Without responding, Plaintiff received another email from the same sender on October 1, 2018, stating: '*Are you here still? I know it's you. I don't want to embarrass you. Please reply before it's too late to stop it.*'" (*Id*. at ¶ 17) (italics in original)

- "Just minutes later, the video of Plaintiff, once again with her full name, was posted on the website pornhub.com." (*Id*. at ¶ 18)

- "In the early evening of October 1, 2018, Plaintiff received another email from the same sender now threatening: '*You have until midnight to send me something good. Or I will post videos, your name, info everywhere. Then I send to people you know. You can enjoy being famous.*'" (*Id*. at ¶ 19) (italics in original)

71312419-1

# EXHIBIT 2

# EXHIBIT "3"



Starr Indemnity & Liability Company

---

> ## Starr Indemnity & Liability Company Commercial Casualty Impairment Liability Program
> ## Claim Reporting Guidelines

**Please Send All Commercial Casualty Impairment Loss Notices To:**

**Sedgwick**
**PO Box 14155**
**Lexington, KY 40512**

**Claims E-mail:**   6260StarrCompanies@sedgwickcms.com
**Claims Fax:**      (855) 563-4382
**After hours emergency call service:**
                    (855) 498-2379

Our preferred method of reporting is by email but Loss Notices may be submitted via certified mail or faxed. If immediate attention is needed, e-mailing or faxing the Loss Notice and/or Claim or Litigation information is strongly recommended. If you have a claim related question and need to contact Sedgwick by telephone, please do so at (855) 498-2379.

**Consult Your Policy For Loss Reporting Requirements**

Your policy states when to report a loss and details the information to be submitted with a First Notice of Loss. This is often found in the General Conditions section, although it may be changed by an endorsement. Additionally, the following information/documentation will always be helpful in assisting us with our evaluation.

- Citing Starr Indemnity & Liability Company policy, or claim number, in all correspondence.
- Providing a copy of any suit, demand for arbitration or mediation, a governmental agency notice, claim letter or any similar notice.
- Sending a copy of any internal reports related to the loss.
- Forwarding copies of status reports prepared by your defense counsel and/or your claim handler, if the case has been pending for a period of time.

Our claim's administrator will always acknowledge each First Notice of Loss, initiate contact to open lines of communication, and will request any additional information that may be needed. Our formal claims acknowledgment will identify the person responsible for handling your reported Claim, and their specific contact information.

If you have questions or would like to discuss a specific loss with one of our Claims Team members, please feel free to contact us. Thank you.

# Exhibit 3

## Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522



**REDACTED**

# COMMERCIAL GENERAL LIABILITY, INCLUDING LIQUOR LIABILITY, DECLARATIONS

**POLICY NO:**    1000305221181

**RENEWAL OF NO:** New

**NAMED INSURED & MAILING ADDRESS:**
Banyan Tree Management, LLC
3384 Peachtree Rd NE, Suite 875
Atlanta  GA  30326

**PRODUCER'S NAME & MAILING ADDRESS**
Mcgriff, Selbels & Williams, Inc
5605 Glenridge Dr. Suite 300
Atlanta  GA  30342

**POLICY PERIOD:** From July 31, 2018 to July 31, 2019 at 12:01 A.M. Standard Time at your mailing address shown above.

**FORM OF BUSINESS:** ☐ INDIVIDUAL ☐ PARTNERSHIP ☐ JOINT VENTURE ☒ LIMITED LIABILITY COMPANY ☐ ORGANIZATION,  INCLUDING A CORPORATION (BUT NOT INCLUDING A PARTNERSHIP, JOINT VENTURE OR LIMITED LIABILITY COMPANY) ☐ TRUST

**DESCRIPTION OF BUSINESS:** HOTEL MANAGEMENT

**LOCATION OF ALL PREMISES YOU OWN, RENT OR OCCUPY:    ON FILE WITH COMPANY**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**POLICY PREMIUM:**
**PREMIUM FOR TERRORISM COVERAGE:**  (included in Policy Premium)
**MINIMUM PREMIUM:**

**SCHEDULE OF STATE TAXES, FEES AND SURCHARGES, IF APPLICABLE:\*\***

\*\*State Taxes, Fees and Surcharges shown are in addition to the above referenced Policy Premium.

**ENDORSEMENTS ATTACHED TO THIS POLICY:   (SEE ATTACHED FORMS SCHEDULE)**

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

Date Issued: September 27, 2018

Copyright © Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

REDACTED

| LIMITS OF INSURANCE | | |
|---|---|---|
| **GENERAL LIABILITY** | | |
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 1,000,000 | ANY ONE PREMISES |
| MEDICAL EXPENSE LIMIT ANY ONE PERSON | $ 10,000 | ANY ONE PERSON |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | ANY ONE PERSON OR ORGANIZATION |
| GENERAL AGGREGATE | $ 2,000,000 | |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |
| **LIQUOR LIABILITY** | | |
| EACH COMMON CAUSE LIMIT | $ 1,000,000 | |
| AGGREGATE LIMIT | $ 2,000,000 | |

| RETROACTIVE DATE (CG 00 02 ONLY) |
|---|
| RETROACTIVE DATE:    NONE |
| (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES.) |

| RETROACTIVE DATE (CG 00 34 ONLY) |
|---|
| RETROACTIVE DATE:    NONE |
| (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES.) |

| CLASSIFICATION AND PREMIUM | | | | | | |
|---|---|---|---|---|---|---|
| CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE | | ADVANCE PREMIUM | |
| | | | Prem/Ops | Prod/Comp Ops | Prem/Ops | Prod/Comp Ops |
| ON FILE WITH COMPANY FOR THE LOCATIONS | | | $ | $ | $ | $ |
| | | | | | Total: | █████ |

A = AREA
M = ADMISSIONS
O = TOTAL OPERATING EXPENSES
P = PAYROLL
S = GROSS SALES
T = OTHER
U = UNITS (EACH)

| AUDIT PERIOD (IF APPLICABLE) | ☒ ANNUAL | ☐ SEMI-ANNUAL | ☐ QUARTERLY | ☐ MONTHLY |
|---|---|---|---|---|

Copyright © Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Exhibit 3**

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

**ADDRESS OF INSURER AND ITS AUTHORIZED AGENTS FOR NOTICES UNDER THIS POLICY**

    **A. Claims - Related Notices:**

| | |
|---|---|
| **New Claims must be reported to:** | **Address** |
| Sedgwick | PO Box 14155 |
| 6260StarrCompanies@sedgwickcms.com | Lexington KY 40512 |
| Claims Fax Number : (855) 563-4382 | |
| Claims Phone Number : (855) 498-2379 | |

    **After hours emergency service call:** (855) 498-2379

    **All Other Notices to the Insurer:**    **Starr Indemnity & Liability Company**
    **399 Park Avenue 8th Floor**
    **New York, NY 10022**

**THIS POLICY CONTAINS AGGREGATE LIMITS; REFER TO SECTION III - LIMITS OF INSURANCE OF THE APPLICABLE COVERAGE PART(S) FOR DETAILS**

The foregoing discloses all hazards insured hereunder known to exist at the inception date of this Policy, unless otherwise stated herein by endorsement on this Policy.

COUNTERSIGNED      September 27, 2018    BY
                          DATE                         AUTHORIZED REPRESENTATIVE

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

**Steve Blakey,  President**             **Nehemiah E. Ginsburg, General Counsel**

           

Copyright © Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Exhibit 3**

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

INTERLINE
SIIL-0000 (1212)

# SIGNATURE PAGE

In witness whereof, we, as officers of the stock Company designated on the Declarations Page, have caused this policy to be executed and attested. If required by state law, this policy shall not be valid unless countersigned by our authorized representative.

_____

Steve Blakey
President

_____

Nehemiah E. Ginsburg
Senior Counsel and Senior Vice
President

SIIL 0000 (12/12)

Copyright © Starr Indemnity & Liability Company. All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Page 1 of 1

**Exhibit 3**

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

# Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This policy includes all the forms and endorsements listed in the Schedule below:

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| Claim Reporting Guidelines | CLAIMS RPT (00/00) |
| Commercial General Liability, Including Liquor Liability, Declarations | GLLL 001 D (03/17) |
| Signature Page | SIIL 0000 (12/12) |
| U.S. Treasury Department's Office Of Foreign Assets Control (OFAC) Advisory Notice To Policyholders | IL P 001 01 04 |
| Schedule of Forms & Endorsements | PC 101 (02/09) |
| Common Policy Conditions | IL 00 17 11 98 |
| Nuclear Energy Liability Exclusion Endorsement (Broad Form) | IL 00 21 09 08 |
| Georgia Changes - Cancellation And Nonrenewal | IL 02 62 02 15 |
| Disclosure Pursuant To Terrorism Risk Insurance Act | IL 09 85 01 15 |
| Commercial General Liability Coverage Form | CG 00 01 04 13 |
| Liquor Liability Coverage Form | CG 00 33 04 13 |
| Employee Benefits Liability Coverage | CG 04 35 12 07 |
| Coverage For Injury To Leased Workers | CG 04 24 10 93 |
| Additional Insured - Managers Or Lessors Of Premises | CG 20 11 04 13 |
| Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits and Authorizations | CG 20 12 04 13 |
| Additional Insured - Vendors | CG 20 15 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |

**PC 101 (02/09)**                                                                                    Page 1 of 4

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of Insurance Services, Inc., used with its permission.

# Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

| | |
|---|---|
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Mortgagee, Assignee Or Receiver | CG 20 18 04 13 |
| Additional Insured - Grantor Of Franchise | CG 20 29 04 13 |
| Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception Not Included | CG 21 07 05 14 |
| Exclusion - Designated Professional Services | CG 21 16 04 13 |
| Employment-Related Practices Exclusion | CG 21 47 12 07 |
| Total Pollution Exclusion With A Building Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception | CG 21 65 12 04 |
| Fungi Or Bacteria Exclusion | CG 21 67 12 04 |
| Exclusion of Other Acts of Terrorism Committed Outside the United States  Cap on Losses from Certified Acts of Terrorism | CG 21 71 01 15 |
| Exclusion of Certified Nuclear Biological Chemical or Radiological Acts of Terrorism  Cap on Losses from Certified Acts of Terrorism | CG 21 84 01 15 |
| Extended Reporting Period for Terrorism Coverage | CG 21 93 07 04 |
| Limited Contractual Liability Coverage For Personal And Advertising Injury | CG 22 74 10 01 |
| Waiver of Transfer of Rights of Recovery Against Others to Us | CG 24 04 05 09 |
| Composite Rating Plan Premium Endorsement | OG 100 (11/09) |

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., used with its permission.

**Exhibit 3**

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

| Primary and Non-Contributory Condition | OG 107 (04/11) |
|---|---|
| Broad Form Named Insured | OG 111 (06/11) |
| Unintentional Errors and Omissions Endorsement | OG 114 (07/11) |
| Amendment of Limits of Insurance (Per Project or Per Location Aggregate Limit) | OG 139 (07/11) |
| Early Notice of Cancellation Provided by Us | OG 141 (03/12) |
| Asbestos and Silica Exclusion Endorsement | OG 142 (03/12) |
| Total Lead Exclusion | OG 143 (03/12) |
| Bodily Injury Definition Extension Endorsement | OG 144 (03/12) |
| Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information Exclusionary Endorsement | OG 166 (09/17) |
| Expected or Intended Injury Endorsement | OG 167 (04/12) |
| Insured s Duties in the Event of a Claim, Occurrence or Suit | OG 171 (04/12) |
| Newly Acquired or Formed Entities | OG 172 (04/12) |
| Non Owned Watercraft Endorsement | OG 173 (04/12) |
| Additional Insured - Owners, Lessees, Or Contractors - Scheduled Person Or Organization | OG 180 (04/12) |
| Additional Insured - Where Required Under Contract or Agreement | OG 184 (04/12) |
| Additional Insured - Designated Person or Organization | OG 213 04 (10/14) |
| Additional Insured - Designated Person or Organization | OG 213 04 (10/14) |

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3



# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____
**Steve Blakey,  President**

_____
**Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Exhibit 3**

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

 Copyright, Insurance Services Office, Inc., 1998

# Exhibit 3

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
**(Broad Form)**

This endorsement modifies insurance provided under the following:

    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

  **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

    **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

  **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

    **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

    **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

  "Hazardous properties" includes radioactive, toxic or explosive properties.

  "Nuclear material" means "source material", "special nuclear material" or "by-product material".

**Exhibit 3**

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  **(a)** Any "nuclear reactor";

  **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

  **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08

# Exhibit 3

IL 02 62 02 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# GEORGIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **A.1.** of the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation stating a future date on which the policy is to be cancelled, subject to the following:

**a.** If only the interest of the first Named Insured is affected, the effective date of cancellation will be either the date we receive notice from the first Named Insured or the date specified in the notice, whichever is later. However, upon receiving a written notice of cancellation from the first Named Insured, we may waive the requirement that the notice state the future date of cancellation, by confirming the date and time of cancellation in writing to the first Named Insured.

**b.** If by statute, regulation or contract this policy may not be cancelled unless notice is given to a governmental agency, mortgagee or other third party, we will mail or deliver at least 10 days' notice to the first Named Insured and the third party as soon as practicable after receiving the first Named Insured's request for cancellation.

Our notice will state the effective date of cancellation, which will be the later of the following:

**(1)** 10 days from the date of mailing or delivering our notice; or

**(2)** The effective date of cancellation stated in the first Named Insured's notice to us.

**B.** Paragraph **A.5.** of the **Cancellation** Common Policy Condition is replaced by the following:

**5. Premium Refund**

**a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

**b.** If we cancel, the refund will be pro rata, except as provided in **c.** below.

**c.** If the cancellation results from failure of the first Named Insured to pay, when due, any premium to us or any amount, when due, under a premium finance agreement, then the refund may be less than pro rata. Calculation of the return premium at less than pro rata represents a penalty charged on unearned premium.

**d.** If the first Named Insured cancels, the refund may be less than pro rata.

**e.** The cancellation will be effective even if we have not made or offered a refund.

IL 02 62 02 15              © Insurance Services Office, Inc., 2014              **Page 1 of 2**

# Exhibit 3

**C.** The following is added to the **Cancellation** Common Policy Condition and supersedes any other provisions to the contrary:

If we decide to:

**1.** Cancel or nonrenew this policy; or

**2.** Increase current policy premium by more than 15% (other than any increase due to change in risk, exposure or experience modification or resulting from an audit of auditable coverages); or

**3.** Change any policy provision which would limit or restrict coverage;

then:

We will mail or deliver notice of our action (including the dollar amount of any increase in renewal premium of more than 15%) to the first Named Insured and lienholder, if any, at the last mailing address known to us. Except as applicable as described in Paragraph **D.** or **E.** below, we will mail or deliver notice at least:

**a.** 10 days before the effective date of cancellation if this policy has been in effect less than 60 days or if we cancel for nonpayment of premium; or

**b.** 45 days before the effective date of cancellation if this policy has been in effect 60 or more days and we cancel for a reason other than nonpayment of premium; or

**c.** 45 days before the expiration date of this policy if we decide to nonrenew, increase the premium or limit or restrict coverage.

**D.** The following provisions apply to insurance covering residential real property only provided under the:

Capital Assets Program (Output Policy) Coverage Part;

Commercial Property Coverage Part;

Farm Coverage Part;

if the named insured is a natural person.

With respect to such insurance, the following is added to the **Cancellation** Common Policy Condition and supersedes any provisions to the contrary except as applicable as described in Paragraph **E.:**

**1.** When this policy has been in effect for 60 days or less and is not a renewal with us, we may cancel for any reason by notifying the first Named Insured at least 10 days before the date cancellation takes effect.

**2.** When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel for one or more of the following reasons:

**a.** Nonpayment of premium, whether payable to us or to our agent;

**b.** Upon discovery of fraud, concealment of a material fact, or material misrepresentation made by or with the knowledge of any person insured under this policy in obtaining this policy, continuing this policy or presenting a claim under this policy;

**c.** Upon the occurrence of a change in the risk which substantially increases any hazard insured against; or

**d.** Upon the violation of any of the material terms or conditions of this policy by any person insured under this policy.

We may cancel by providing notice to the first Named Insured at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 45 days before the effective date of cancellation if we cancel for any of the reasons listed in **b., c.** or **d.** above.

**E.** With respect to a policy that is written to permit an audit, the following is added to the **Cancellation** Common Policy Condition:

If you fail to submit to or allow an audit for the current or most recently expired term, we may cancel this policy subject to the following:

**1.** We will make two documented efforts to send you and your agent notification of potential cancellation. After the second notice has been sent, we have the right to cancel this policy by mailing or delivering a written notice of cancellation to the first Named Insured at least 10 days before the effective date of cancellation, but not within 20 days of the first documented effort.

**2.** If we cancel this policy based on your failure to submit to or allow an audit, we will send the written notice of cancellation to the first Named Insured at the last known mailing address by certified mail or statutory overnight delivery with return receipt requested.

© Insurance Services Office, Inc., 2014

# Exhibit 3

POLICY NUMBER: 1000305221181          IL 09 85 01 15

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE – PART I |
|---|
| **Terrorism Premium (Certified Acts)** ▇▇▇ |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| Commercial General Liability Coverage Form<br>Employee Benefits Liability Coverage Form<br>1000305221181 |
| **Additional information, if any, concerning the terrorism premium:** |

| SCHEDULE – PART II | | |
|---|---|---|
| **Federal share of terrorism losses**<br>(Refer to Paragraph **B.** in this endorsement.) | ▇▇▇ | **Year: 2015** |
| **Federal share of terrorism losses**<br>(Refer to Paragraph **B.** in this endorsement.) | ▇▇▇ | **Year: 2016** |
| **Federal share of terrorism losses**<br>(Refer to Paragraph **B.** in this endorsement.) | ▇▇▇ | **Year: 2017** |
| **Federal share of terrorism losses**<br>(Refer to Paragraph **B.** in this endorsement.) | ▇▇▇ | **Year: 2018** |
| **Federal share of terrorism losses**<br>(Refer to Paragraph **B.** in this endorsement.) | ▇▇▇ | **Year: 2019** |
| **Federal share of terrorism losses**<br>(Refer to Paragraph **B.** in this endorsement.) | ▇▇▇ | **Year: 2020** |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

# Exhibit 3

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015
**IL 09 85 01 15**

# Exhibit 3

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** –Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

**Exhibit 3**

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is

© Insurance Services Office, Inc., 2012        CG 00 01 04 13

**Exhibit 3**

used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such

fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other

# Exhibit 3

wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

  **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

  **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage

# Exhibit 3

arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

© Insurance Services Office, Inc., 2012

**Exhibit 3**

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**Exhibit 3**

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**COVERAGE C – MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**Exhibit 3**

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization

# Exhibit 3

other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

  **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

  **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

  **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

  **(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

  **(a)** Owned, occupied or used by;

  **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

  you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

  **(1)** With respect to liability arising out of the maintenance or use of that property; and

  **(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

  **b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

  **c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

  **a.** Medical expenses under Coverage **C;**

  **b.** Damages under Coverage **A,** except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

  **c.** Damages under Coverage **B.**

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

  **a.** Damages under Coverage **A;** and

  **b.** Medical expenses under Coverage **C**

  because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To

# Exhibit 3

Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily

# Exhibit 3

occupied by you with permission of the owner; or

    **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

# Exhibit 3

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication.

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or

**Exhibit 3**

failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and

# Exhibit 3

waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on

# Exhibit 3

your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.

# Exhibit 3

# LIQUOR LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – LIQUOR LIABILITY COVERAGE

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to "injury" only if:

**(1)** The "injury" occurs during the policy period in the "coverage territory"; and

**(2)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "injury" or claim, knew that the "injury" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "injury" occurred, then any continuation, change or resumption of such "injury" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim, includes any continuation, change or resumption of that "injury" after the end of the policy period.

**d.** "Injury" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "injury" or claim:

**(1)** Reports all, or any part, of the "injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "injury"; or

**(3)** Becomes aware by any other means that "injury" has occurred or has begun to occur.

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

 © Insurance Services Office, Inc., 2012

Exhibit 3

**c. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the "injury".

**d. Liquor License Not In Effect**

"Injury" arising out of any alcoholic beverage sold, served or furnished while any required license is not in effect.

**e. Your Product**

"Injury" arising out of "your product". This exclusion does not apply to "injury" for which the insured or the insured's indemnitees may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

**f. Other Insurance**

Any "injury" with respect to which other insurance is afforded, or would be afforded but for the exhaustion of the limits of insurance.

This exclusion does not apply if the other insurance responds to liability for "injury" imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage.

**g. War**

"Injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against

any of these.

**SUPPLEMENTARY PAYMENTS**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**1.** All expenses we incur.

**2.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**3.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**4.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**5.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**6.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

**7.** Expenses incurred by the insured for first aid administered to others at the time of an event to which this insurance applies.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

  **a.** An individual, you and your spouse are insureds.

  **b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

  **c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

  **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

  **e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their

© Insurance Services Office, Inc., 2012   CG 00 33 04 13

# Exhibit 3

duties as trustees.

**2.** Each of the following is also an insured:

  **a.** Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

    **(1)** "Injury":

      **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

      **(b)** To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **(a)** above; or

      **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(a)** or **(b)** above.

    **(2)** "Property damage" to property:

      **(a)** Owned or occupied by; or

      **(b)** Rented or loaned;

    to that "employee", any of your other "employees", by any of your partners or members (if you are a partnership or joint venture), or by any of your members (if you are a limited liability company).

  **b.** Any person or organization having proper temporary custody of your property if you die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until your legal representative has been appointed.

  **c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly form or acquire, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

  **a.** Coverage under this provision is afforded only until the 90th day after you acquire or form

the organization or the end of the policy period, whichever is earlier; and

  **b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

  **a.** Insureds;

  **b.** Claims made or "suits" brought; or

  **c.** Persons or organizations making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for all "injury" as the result of the selling, serving or furnishing of alcoholic beverages.

**3.** Subject to the Aggregate Limit, the Each Common Cause Limit is the most we will pay for all "injury" sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – LIQUOR LIABILITY CONDITIONS**

**1. Bankruptcy**

  Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Injury, Claim Or Suit**

  **a.** You must see to it that we are notified as soon as practicable of an "injury" which may result in a claim. To the extent possible, notice should include:

    **(1)** How, when and where the "injury" took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any "injury".

  **b.** If a claim is made or "suit" is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

# Exhibit 3

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury" to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary. Our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **b.** below.

**b. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

# Exhibit 3

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the "injury" occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

   c. All other parts of the world if the "injury" arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph **a.** above; or

      (2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business;

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

3. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

4. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

5. "Injury" means damages because of "bodily injury" and "property damage", including damages for care, loss of services or loss of support.

6. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

7. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

9. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

10. "Your product":

    a. Means:

       (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

          (a) You;

          (b) Others trading under your name; or

          (c) A person or organization whose business or assets you have acquired; and

       (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

# Exhibit 3



POLICY NUMBER: 1000305221181

COMMERCIAL GENERAL LIABILITY
CG 04 35 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS-MADE COVERAGE.**
**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Limit Of Insurance | | Each Employee Deductible | Premium |
|---|---|---|---|---|
| **Employee Benefits Programs** | $  1,000,000 | **each employee** | $  1,000 | ███████ |
| | $  2,000,000 | **aggregate** | | |
| **Retroactive Date:** | 07/31/2018 | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**A.** The following is added to **Section I – Coverages:**
**COVERAGE  –  EMPLOYEE  BENEFITS LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

     **(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section **III** – Limits Of Insurance); and

     **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

   **b.** This insurance applies to damages only if:

     **(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

     **(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

     **(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

   **c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

     **(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

© ISO Properties, Inc., 2006

# Exhibit 3

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments – Coverages **A** and **B** are replaced by Supplementary Payments – Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II – Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

# Exhibit 3

    **b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III – Limits Of Insurance** is replaced by the following:

    **1. Limits Of Insurance**

        **a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

            **(1)** Insureds;

            **(2)** "Claims" made or "suits" brought;

            **(3)** Persons or organizations making "claims" or bringing "suits";

            **(4)** Acts, errors or omissions; or

            **(5)** Benefits included in your "employee benefit program".

        **b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

        **c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

            **(1)** An act, error or omission; or

            **(2)** A series of related acts, errors or omissions

        negligently committed in the "administration" of your "employee benefit program".

        However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

    **2. Deductible**

        **a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

        **b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

        **c.** The terms of this insurance, including those with respect to:

            **(1)** Our right and duty to defend any "suits" seeking those damages; and

            **(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

        apply irrespective of the application of the deductible amount.

        **d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of **Section IV – Commercial General Liability Conditions** are replaced by the following:

    **2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

        **a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

            **(1)** What the act, error or omission was and when it occurred; and

            **(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

        **b.** If a "claim" is made or "suit" is brought against any insured, you must:

            **(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

            **(2)** Notify us as soon as practicable.

        You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

        **c.** You and any other involved insured must:

            **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

            **(2)** Authorize us to obtain records and other

**Exhibit 3**

information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible

and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting

© ISO Properties, Inc., 2006

CG 04 35 12 07

**Exhibit 3**

Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

**e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

# Exhibit 3

**COMMERCIAL GENERAL LIABILITY**
**CG 04 24 10 93**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# COVERAGE FOR INJURY TO LEASED WORKERS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

With respect to the Employer's Liability exclusion (Section **I**) only, the definition of "employee" in the DEFINITIONS Section is replaced by the following:

    "Employee" does not include a "leased worker" or a "temporary worker".

# Exhibit 3

POLICY NUMBER: 1000305221181       **REDACTED**      COMMERCIAL GENERAL LIABILITY
CG 20 11 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Designation Of Premises (Part Leased To You): |
| --- |
| Any premises or part thereof leased to you. |
| **Name Of Person(s) Or Organization(s) (Additional Insured):** |
| Any person or organization from whom you lease premises or who manages premises you own and to whom you become obligated to include as an additional insured under this policy as a result of any lease or management agreement you enter into with such parties. |
| **Additional Premium:**      $ <br> ████ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person(s) or organization(s) shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

      © Insurance Services Office, Inc., 2012

# Exhibit 3

POLICY NUMBER: 1000305221181

COMMERCIAL GENERAL LIABILITY
CG 20 12 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION – PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| State Or Governmental Agency Or Subdivision Or Political Subdivision: |
| --- |
| Where Required By Written Contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

**1.** This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

However:

**a.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**b.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**2.** This insurance does not apply to:

**a.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

**b.** "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

© Insurance Services Office, Inc., 2012

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 15 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – VENDORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s): | Your Products |
|---|---|
| Vendors who sell or distribute your products | All Products |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) (referred to throughout this endorsement as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business.

However:

**1.** The insurance afforded to such vendor only applies to the extent permitted by law; and

**2.** If coverage provided to the vendor is required by a contract or agreement, the insurance afforded to such vendor will not be broader than that which you are required by the contract or agreement to provide for such vendor.

**B.** With respect to the insurance afforded to these vendors, the following additional exclusions apply:

**1.** The insurance afforded the vendor does not apply to:

   **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

   **b.** Any express warranty unauthorized by you;

   **c.** Any physical or chemical change in the product made intentionally by the vendor;

   **d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   **e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

   **f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   **g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

   **h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

      **(1)** The exceptions contained in Sub-paragraphs **d.** or **f.**; or

      **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**2.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**C.** With respect to the insurance afforded to these

CG 20 15 04 13

**Page 1 of 2**

# Exhibit 3

vendors, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the vendor is required by a contract or agreement, the most we will pay on behalf of the vendor is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# Exhibit 3

POLICY NUMBER: 1000305221181

COMMERCIAL GENERAL LIABILITY
CG 20 18 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Wells Fargo Bank, NA as Trustee for Morgan Stank Bank of America | 530 Providence Park Dr E location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

Page 1 of 1

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Choice Hotels International Inc. | 51 Gulf Breeze Pkwy location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Deutsche Bank Trust Company Americas | 35 Bluffton Rd location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Redwood Commercial Mortgage Corp c/o Keycorp Real Estate Capital Markets, Inc | 35 Bluffton Rd location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

Page 1 of 1

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| US Bank NA, as Trustee  c/o Midland Loan Services | 25 Chapel St location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Branch Banking & Trust Co | 2485 George Busbee Pkwy location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

Page 1 of 1

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Wells Fargo Bank, NA as Trustee c/o Midland Loan Services | 25 Chapel St location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

Page 1 of 1

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Wells Fargo Bank, NA | 4070 E Main St location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| German American Capital Corp | 3325 US 41 S location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural

alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 18 04 13

Page 1 of 1

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Citigroup Global Markets Realty Corp  c/o Wells Fargo Bank | 25 Chapel St location |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# Exhibit 3

POLICY NUMBER: 1000305221181

COMMERCIAL GENERAL LIABILITY
CG 20 18 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Where Required By Written Contract | Where Required By Written Contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 20 29 04 13**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Name Of Person(s) Or Organization(s): |
| Where Required By Written Contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

CG 20 29 04 13 © Insurance Services Office, Inc., 2012 **Page 1 of 1**

# Exhibit 3

COMMERCIAL GENERAL LIABILITY
CG 21 07 05 14

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

   **2. Exclusions**

   This insurance does not apply to:

   **p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

   Damages arising out of:

   **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

   **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

   As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

   **2. Exclusions**

   This insurance does not apply to:

   **Access Or Disclosure Of Confidential Or Personal Information**

   "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

   This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© Insurance Services Office, Inc., 2013

**Exhibit 3**

POLICY NUMBER: 1000305221181

COMMERCIAL GENERAL LIABILITY
CG 21 16 04 13

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Description Of Professional Services |
|---|
| **1.** Any and all professional services |

| |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

With respect to any professional services shown in the Schedule, the following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional service.

© Insurance Services Office, Inc., 2012

# Exhibit 3

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

© ISO Properties, Inc., 2006

# Exhibit 3

COMMERCIAL GENERAL LIABILITY
CG 21 65 12 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties, Inc., 2003

# Exhibit 3

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc.,  2003

**Exhibit 3**

COMMERCIAL GENERAL LIABILITY
CG 21 71 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25,000,000 (valued in U.S. dollars). In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

    **a.** Physical injury that involves a substantial risk of death; or

    **b.** Protracted and obvious physical disfigurement; or

    **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

    **b.** The act resulted in damage:

        **(1)** Within the United States (including its territories and possessions and Puerto Rico); or

© Insurance Services Office, Inc., 2015

**Exhibit 3**

(2) Outside of the United States in the case of:

    (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

    (b) The premises of any United States mission; and

**c.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**3.** "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

# Exhibit 3

COMMERCIAL GENERAL LIABILITY
CG 21 84 01 15

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015

**Exhibit 3**

COMMERCIAL GENERAL LIABILITY
CG 21 93 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXTENDED REPORTING PERIOD FOR TERRORISM COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART (CLAIMS-MADE VERSION)
LIQUOR LIABILITY COVERAGE PART (CLAIMS-MADE VERSION)
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART (CLAIMS-MADE VERSION)
UNDERGROUND STORAGE TANK POLICY

The following provision is added and supersedes any provision to the contrary when an exclusion of terrorism contained in a Conditional Exclusion of Terrorism endorsement attached to this policy goes into effect.

If:

**a.** An incident of terrorism occurred before the conditional exclusion went into effect, but not before November 26, 2002;

**b.** A claim arising out of that incident would have been covered under the provisions of this insurance had the claim been made prior to the conditional exclusion taking effect; and

**c.** That claim is for any injury or damage arising out of the incident of terrorism and it is made within 5 years after the date the conditional exclusion went into effect;

that claim will be considered to have been first made prior to the time that the conditional exclusion went into effect.

This provision does not apply to claims covered by subsequent insurance you purchase, or that would have been covered but for the exhaustion of the amount of insurance applicable to such claims.

The phrase, any injury or damage, means "any injury or damage" as defined in a Conditional Exclusion of Terrorism endorsement.

   © ISO Properties, Inc., 2004

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 22 74 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITED CONTRACTUAL LIABILITY COVERAGE FOR PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| Designated Contract Or Agreement:<br>Per schedule on file with this Company. |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** With respect to the contract or agreement designated in the Schedule above, Subparagraph **e.** of Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement.

This exclusion does not apply to:

**(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

**(2)** Liability for "personal and advertising injury" if:

**(a)** The liability pertains to your business and is assumed in the designated contract or agreement shown in the Schedule in which you assume the tort liability of another. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**(b)** The "personal and advertising injury" occurs subsequent to the execution of the designated contract or agreement shown in the Schedule; and

**(c)** The "personal and advertising injury" arises out of the offenses of false arrest, detention or imprisonment.

© ISO Properties, Inc.,  2001

**Exhibit 3**

Solely for the purposes of liability so assumed in such designated contract or agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "personal injury" described in Paragraph **A.2.e.(2)(c)** above, provided:

   **(i)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same designated contract or agreement; and

   **(ii)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**B.** With respect to the contract or agreement designated in the Schedule above, the following is added to **Section I – Supplementary Payments – Coverages A And B:**

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**1.** The "suit" against the indemnitee seeks damages for which the insured has assumed tort liability of the indemnitee in a designated contract or agreement shown in the Schedule, if such liability pertains to your business. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

**2.** This insurance applies to such liability assumed by the insured;

**3.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same designated contract or agreement;

**4.** The allegations in the "suit" and the information we know about the offense are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**5.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**6.** The indemnitee:

   **a.** Agrees in writing to:

      **(1)** Cooperate with us in the investigation, settlement or defense of the "suit";

      **(2)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      **(3)** Notify any other insurer whose coverage is available to the indemnitee; and

      **(4)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   **b.** Provides us with written authorization to:

      **(1)** Obtain records and other information related to the "suit"; and

      **(2)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **A.2.e.(2)** of this endorsement, such payments will not be deemed to be damages for "personal and advertising injury" as described in Paragraph **A.2.e.(2)(c)** above and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

**1.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**2.** The conditions set forth above, or the terms of the agreement described in Paragraph **6.** above, are no longer met.

 © ISO Properties, Inc.,  2001 CG 22 74 10 01

# Exhibit 3

POLICY NUMBER: 1000305221181

**COMMERCIAL GENERAL LIABILITY**
**CG 24 04 05 09**

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Person Or Organization: |
|---|
| Any person or organization to whom you become obligated to waive your rights of recovery against, under any contract or agreement you enter into prior to the occurrence of loss. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

© Insurance Services Office, Inc., 2008

**Exhibit 3**





# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

# Composite Rating Plan Premium Endorsement

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

Commercial General Liability Coverage Form
Business Auto Coverage Form

**The Class Code, Premium Basis, and Rate section of the Policy Declarations is changed to apply as follows:**

**A.**   The premium for this policy will be computed upon a composite basis as shown below in accordance with our rules, rates, rating plans, premiums and minimum premiums and the other policy terms.

| Coverage (CGL or BA) | Premium Type (S or NS) | Estimated Basis of Premium | Composite Rate(s) | Estimated Premium | Minimum Premium | Deposit Premium |
|---|---|---|---|---|---|---|
| Vacant Land | ■ | ■ | ■ | ■ | ■ | ■ |
| Hotel Rooms | ■ | ■ | ■ | ■ | ■ | ■ |
| | | | Totals: | ■ | ■ | ■ |

**B.**   The Composite Rate(s) shown above apply per 1 of Units, (a basis of premium type defined below or on page 2 of this endorsement).

**C.**   If no number or no basis of premium type is inserted, for Commercial General Liability Insurance (CGL Coverage) the rate shall apply per 1000 of "Sales"; or for Business Auto Insurance (BA Coverage) the rate shall apply per 1 Unit where "Unit" means a powered covered "auto".

**D.**   If "Sales" is selected as the basis of premium, such "Sales" will include both foreign and domestic sales and sales by one named insured to another unless otherwise indicated by "x" below:

☐   "Sales" do NOT include foreign sales.

☐   "Sales" do NOT include sales by one named insured to another.

**E.**   If "Units" is selected as the basis of premium, a Unit is a(n)  Hotel Room.

**F.**   Other Basis of Premium Type: (Define herein or in "Exceptions" on Page 3)

**G.**   DEFINITIONS OF "BASIS OF PREMIUM TYPE" (Subject to "Exceptions", if any, described below)

**1.**   **Admissions** means the total number of persons, other than you, your partners and your employees, admitted during the policy period, to events conducted on premises you own, rent, lease, or otherwise control, whether on paid admission tickets, complimentary tickets or passes.

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

**2.** <u>Cost</u> means the total cost to you for all work performed for you during the policy period by independent contractors and their subcontractors at all levels, including the cost of all labor, materials, equipment and supplies furnished, used or delivered for use in the execution of such work, whether furnished by the owner, by contractors or subcontractors at any level, including, but not limited to, all fees, allowances, bonuses, and commissions either made, paid or due, as well as taxes other than taxes which you collect as a separate item and remit directly to a governmental division.

**3.** <u>Receipts</u> means the gross amount of money you have charged others for work that you, your partners, your employees, your contractors and subcontractors at all levels have performed during the policy period, including taxes other than taxes which you collect as a separate item and remit directly to a governmental division.

**4.** <u>Remuneration</u> or <u>Payroll</u> means all of the money or the substitute for money earned during the policy period by you if you are the proprietor of the insured business, by all partners if you are a partnership or by all members if you are a Limited Liability Company, and by all your employees for their services to you during the policy period, subject to the following:

☐ Total Gross Remuneration or Payroll, without limitation; or

☐ Determined and limited in accordance with our Workers' Compensation Insurance Manual's rules respectively for the states in which you have employment; or

☐ Determined and limited in accordance with our General Liability Insurance Manual's rules respectively for the states in which you have employment.

**5.** <u>Sales</u> means the gross amount of money you or others trading in your name have charged for all goods and services you or they have sold or distributed during the policy period, including charges for delivery, installation, service and repair, and including taxes other than taxes which you or such others collect as a separate item and remit directly to a governmental division.

**6.** <u>Units</u> means the number of items of the types specified in this endorsement.

   **a.** <u>Units that you hold for use in your business</u> shall mean half the sum of their number at the policy's inception and their number at its expiration or termination, (if terminated then pro-rated by the fraction of an annual period that the policy remained in effect).

   **b.** <u>Units that you sell to others</u> whether for your own account or the account of another, shall mean the total number of such units that you sell during the policy term.

**7.** Other Definitions

   **a.** <u>Subject</u> is a Premium Type that is subject to adjustment under a retrospective rating plan described in an endorsement attached to the policy. "Subject" is signified on Page 1 by a Premium Type "S".

   **b.** <u>Non-Subject</u> is a Premium Type that is NOT subject to adjustment under a retrospective rating plan described in an endorsement attached to the policy. "Non-Subject" is signified on Page 1 by a Premium Type "NS".

   **c.** <u>Exceptions</u>:Vacant Land - Acreage

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3



**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____                    _____
**Steve Blakey,  President**                                  **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3



## Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

# Primary and Non-Contributory Condition

**Policy Number:** 1000305221181        **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:**Banyan Tree Management, LLC

This endorsement modifies insurance provided under the:

### Commercial General Liability Coverage Part

**A.   SECTION IV – CONDITIONS,** condition **4. Other Insurance** is amended as follows:

   **1.**   The following is added to paragraph **4.a.** of the **Other Insurance** condition:

   This insurance is primary insurance as respects our coverage to the additional insured, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured is a Named Insured.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

**Steve Blakey,  President**          **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# Broad Form Named Insured

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

### Commercial General Liability Coverage Form

Policy Declarations, "Named Insured" is revised to include:

"Named Insured" means the person or organization first named as the Named Insured on the Declarations Page of this policy (the "First Named Insured").

Named Insured also includes (1) any other person or organization named as a Named Insured on the Declarations Page;

(2) any subsidiary, associated, affiliated, allied or acquired company or corporation (including subsidiaries thereof) of which any insured named as the Named Insured on the Declarations Page has more than 50% ownership interest in or exercises management or financial control over at the inception date of this policy, or perform substantially similar operations as the first named insured.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_Steve Blakey_                                                  _Nehemiah E. Ginsburg_

**Steve Blakey,  President**                    **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3



## Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

# Unintentional Errors and Omissions Endorsement

**Policy Number:** 1000305221181        **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:**Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

Commercial General Liability Coverage Form

Section IV - Commercial General Liability Conditions, 6. – Representations is amended by adding:

The unintentional failure by you or any Insured to provide accurate and complete representations as of the inception of the policy will not prejudice the coverages afforded by this policy.*

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____          _____
**Steve Blakey,  President**                **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# Amendment of Limits of Insurance
# (Per Project or Per Location Aggregate Limit)

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

I.    Your policy is amended to include either a Per Project General Aggregate Limit, a Per Location General Aggregate Limit or a Per Project and Per Location General Aggregate Limit. Please select only one of the following:

    1.
        [   ]   **Per Project General Aggregate Limit**
        [ X ]   **Per Location General Aggregate Limit**                    **$ 2,000,000**

        [   ]   **Per Project and Per Location General Aggregate Limit**

    2.
        [   ]   **Overall Policy Aggregate Limit**


IF NEITHER OF THESE BOXES ARE CHECKED, THIS ENDORSEMENT IS VOID. IF MORE THAN ONE OF THE THESE BOXES ARE CHECKED, THIS ENDORSEMENT IS VOID.


II.    **SECTION III – LIMITS OF INSURANCE,** is amended to include the following:

    1.    The Limits of Insurance and the rules below fix the most we will pay regardless of the number of:

        a.    Insureds;
        b.    Claims made or "suits" brought; or
        c.    Persons or organizations making claims or bringing "suits".

    2.    The General Aggregate Limit is the most we will pay for the sum of:

        a.    Medical expenses under Coverage **C**;
        b.    Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the products-completed operations hazard"; and
        c.    Damages under Coverage **B**.

    3.    Persons or organizations making claims or bringing "suits".

    4.    The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

    5.    Subject to **2** above, the Personal and Advertising Injury Limit is the most we will pay under

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

6.  Subject to **2** or **3** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under Coverage **A**; and
    b.  Medical expenses under Coverage **C** because of all "bodily injury" and "property damage" arising out of any one "occurrence".

7.  Subject to **5** above, the Damage to Premises Rented to You Limit is the most we will pay under Coverage **A** because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission by the owner.

8.  Subject to **5** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

9.  Subject to **2, 4, 5, 6**, and/or **7** above, the Per Project Aggregate Limit is the most we will pay under Coverages **A, B**, and **C** combined for the sum of:

    a.  Damages under Coverage A;
    b.  Damages under Coverage B; and
    c.  Medical expenses under Coverage C

    arising out of the any single Location described above.

10. Subject to 2, 4, 5, 6, and/or 7 above, the Per Location Aggregate Limit is the most we will pay under Coverages A, B, and C combined for the sum of:

    d.  Damages under Coverage **A**;
    e.  Damages under Coverage **B**; and
    f.  Medical expenses under Coverage **C**

    arising out of the any single Location described above.

11. The Overall Policy Aggregate is the most we will pay in any policy period regardless of number of projects or locations.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

III. The Limits of Insurance shown in the Declarations are deleted in their entirety and replaced by the Limits of Insurance set forth below.

|  | Limits of Insurance |
|---|---|
| General Aggregate Limit | $ 2,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Products-Completed Operations Aggregate Limit | $ 2,000,000 |
| Personal & Advertising Injury Limit | $ 1,000,000 |
| Damage to Premises Rented to You | $ 1,000,000 |
| Medical Expense Limit | $ 10,000 |
| Overall Policy Aggregate Limit Capped At | $ 10,000,000 |

OG 139 (07/11)                                                                                                    Page 2 of 3

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

 **Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

IV.   **SECTION V – DEFINITIONS:** is amended to include the following:

23.  "Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway, or right-of-way railroad.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

**Steve Blakey,  President**                          **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

**Exhibit 3**



**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EARLY NOTICE OF CANCELLATION PROVIDED BY US

**Policy Number:** 1000305221181      **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Form**

**COMMON POLICY CONDITIONS,** A. - Cancellation, 2. is amended to read:

2.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a.  (10)* days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  (30)* days before the effective date of cancellation if we cancel for any other reason.

    * **The notice period provided shall not be less than that required by applicable state laws.**

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

| | |
|---|---|
| *Steve Blakey* | *Nehemiah E. Ginsburg* |
| **Steve Blakey,  President** | **Nehemiah E. Ginsburg, General Counsel** |

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# ASBESTOS AND SILICA EXCLUSION ENDORSEMENT

**Policy Number:** 1000305221181        **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Form**

**SECTION I - COVERAGES**, **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. - Exclusions**, and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**, **2. - Exclusions**, are amended to include the following exclusions:

Asbestos

"Bodily injury" or "property damage" or "personal and advertising injury"  arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" or "personal and advertising injury" arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

Silica

"Bodily injury" or "property damage" or "personal and advertising injury" or any other loss, cost or expense arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form, or to any obligation of the insured to indemnify any party because of "bodily injury" or "property damage" or "personal and advertising injury" arising out of the presence, ingestion, inhalation or absorption of or exposure to silica products, silica fibers, silica dust or silica in any form.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_Steve Blakey_

**Steve Blakey,  President**

_Nehemiah E. Ginsburg_

**Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3



**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# TOTAL LEAD EXCLUSION

**Policy Number:** 1000305221181      **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies insurance provided under the following:

**Commercial General Liability Coverage Part**
**Commercial Umbrella Liability**

This insurance does not apply to any "bodily injury", "property damage", "personal and advertising injury", or any other loss, cost or expense arising out of the presence, ingestion, inhalation, or absorption of or exposure to lead in any form or products containing lead.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_Steve Blakey_                          _Nehemiah E. Ginsburg_
_____              _____
**Steve Blakey,  President**              **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

## Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ CAREFULLY

## BODILY INJURY DEFINITION EXTENSION ENDORSEMENT

**Policy Number:** 1000305221181     **Effective Date:** July 31, 2018 at 12:01 A.M.
**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM Section V - Definitions, 3. - "Bodily injury" is amended to read:

3.       "Bodily injury" means physical injury, sickness ordisease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

**Steve Blakey,  President**          **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information Exclusionary Endorsement

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

**Commercial General Liability Coverage Form**

It is hereby agreed as follows:

1.  **SECTION I – COVERAGES**, **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, **2. Exclusions** is amended to include the following:

    **Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information**

    "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate any statute, ordinance, or regulation of any federal, state or local government, including any amendment of or addition to such laws, that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

2.  **SECTION I – COVERAGES**, **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, **2. Exclusions** is amended to include the following:

    **Violation of Statutes in Connection with Sending, Transmitting or Communicating any Material or Information**

    "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate any statute, ordinance, or regulation of any federal, state or local government, including any amendment of or addition to such laws, that addresses or applies to the sending, transmitting or communicating of any material or information, by any means whatsoever.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

OG 166 (09/17)                                                                                          Page 1 of 2

Copyright © Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

_____        _____
**Steve Blakey,  President**              **Nehemiah E. Ginsburg, General Counsel**

Copyright © Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties Inc., used with its permission.

# Exhibit 3



# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# Expected or Intended Injury Endorsement

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

### Commercial General Liability Coverage Form

**SECTION 1 – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, a. Expected or Intended Injury** is deleted in its entirety and replaced by the following:

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of force to protect persons or property.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

**Steve Blakey,  President**          **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc. used with its permission.

# Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# Insured's Duties in the Event of a Claim, Occurrence or Suit

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

**Commercial General Liability Coverage Form**

**SECTION IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, a.** is hereby deleted and replaced with the following:

You must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim.  Knowledge of an "occurrence" or an offense by your agent, your servant, or your employee will not in itself constitute knowledge to you unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have received such notice.  To the extent possible notice should include:

How, when and where the "occurrence" or offense took place;
The names and addresses of any injured persons and witnesses; and

The nature and location of any injury or damage arising out of the "occurrence" or offense.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____          _____
**Steve Blakey,  President**                              **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3



# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# Newly Acquired or Formed Entities

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

### Commercial General Liability Coverage Form

**SECTION II – WHO IS AN INSURED** 3. is amended as

Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured, if there is no other similar insurance available to that organization .However:

a. Coverage under this provision is afforded only until the 120th day after you acquire or form the organization, or to the end of the policy period, whichever is earlier.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____          _____
**Steve Blakey,  President**                    **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

## Exhibit 3



**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

# Non Owned Watercraft Endorsement

**Policy Number:** 1000305221181      **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies the insurance coverage form(s) listed below that have been purchased by you and evidenced as such on the Declarations page.  Please read the endorsement and respective policy(ies) carefully.

**Commercial General Liability Coverage Form**

**SECTION I – COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. - Exclusions, g. - Aircraft, Auto or Watercraft, (2),** is amended to read:

(2)    A watercraft you do not own that is:

    (a)    Less than 26 feet long; and

    (b)    Not being used to carry persons or property for a charge.

However, this exception does not apply to watercraft you do not own that is used in any pre-arranged race or speed contest.

**Section II - WHO IS AN INSURED,** is amended to add following the last unmarked paragraph:  No person is an insured with respect to any watercraft owned in whole or in part by such person or by a member of his household.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

Steve Blakey

_____
**Steve Blakey,  President**

Nehemiah E. Ginsburg

_____
**Nehemiah E. Ginsburg, General Counsel**

OG 173 (04/12)      Page 1 of 1

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

# Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

# ADDITIONAL INSURED- OWNERS, LESSEES, OR CONTRACTORS - SCHEDULED PERSON OR ORGANIZATION

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

NAME OF PERSON OR ORGANIZATION:

. Where Required By Written Contract

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to the endorsement.)

A. SECTION II -WHO IS AN INSURED is amended to include as an insured;

The person or organization shown in the schedule, but only with respect to liability arising out of your ongoing operations performed for that additional insured.

B. With respect to the insurance afforded to these additional insureds, SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. -Exclusions, is amended to include the following additional exclusion;

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1) all work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or,

(2) that portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____          _____
**Steve Blakey,  President**                              **Nehemiah E. Ginsburg, General Counsel**

OG 180 (04/12)                                                                                    Page 1 of 1

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

# ADDITIONAL INSURED - WHERE REQUIRED
# UNDER CONTRACT OR AGREEMENT

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

*This endorsement modifies insurance provided under the following:*

   COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**SECTION II - WHO IS AN INSURED,** is amended to include as an additional insured:

Any person or organization to whom you become obligated to include as en additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you. However, the insurance provided will not exceed the lesser of:

- The coverage and/or limits of this policy, **or**
- The coverage and/or limits required by said contract or agreement.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____            _____
**Steve Blakey,  President**                          **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

# Starr Indemnity & Liability Company

Dallas, TX 1-866-519-2522

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| Where Required By Written Contract |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____          _____
**Steve Blakey,  President**                         **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3

**Starr Indemnity & Liability Company**

Dallas, TX 1-866-519-2522

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

**Policy Number:** 1000305221181          **Effective Date:** July 31, 2018 at 12:01 A.M.

**Named Insured:** Banyan Tree Management, LLC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
| --- |
| HD Realty, LLC |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

All other terms and conditions of this Policy remain unchanged.

**Signed for STARR INDEMNITY & LIABILITY COMPANY**

_____          _____
    **Steve Blakey,  President**              **Nehemiah E. Ginsburg, General Counsel**

Copyright © C. V. Starr & Company and Starr Indemnity & Liability Company.  All rights reserved.
Includes copyrighted material of ISO Properties, Inc., used with its permission.

Exhibit 3